## AUGUST MENGE

*v.*

## MORRIS AND ESSEX RAILROAD COMPANY et al.

[Decided September 20th, 1907.]

1. Injunction is the proper remedy to restrain a railroad company from taking complainant's property without compensation, not because an injunction will issue to restrain an ordinary trespass, but to protect the property owner's constitutional right against aggression.

2. Where a railroad company may condemn land for railroad purposes, an injunction will be issued at the suit of a private property owner to restrain the company from taking or using the land without first making compensation only where the corporation is willfully proceeding in violation of the owner's constitutional right.

3. Where a railroad company has entered private property to appropriate the same without first having proceeded to condemn it, the property owner may sue at law every day for damages for the trespass, or he may maintain ejectment.

4. A constitutional right differs from a right conferred by the common law or by statute only in the fact that it is guarded from any attack or interference by the legislature, or any other governmental agent, and is not entitled by its nature to protection by injunction to a greater extent than any other right.

5. A railroad, under the belief that a satisfactory arrangement would be reached for the taking of complainant's land for a tunnel, delayed condemnation proceedings, and prosecuted the work up to complainant's property line before he made complaint to any court. The railroad proposed to tunnel through solid rock in complainant's land fifty feet below the surface without affecting the enjoyment of complainant's building, and without any intent to evade its duty to pay complainant's compensation, which it stood ready, willing and able to do.—*Held*, that though defendant was a trespasser in taking complainant's land without first making compensation, an injunction restraining defendant's construction would be refused on condition that defendant pay a satisfactory sum into court to guarantee complainant just compensation, and diligently prosecute condemnation proceedings.

On bill for injunction.

*Mr. James J. Murphy* and *Mr. Charles J. Roe,* for the complainant.

*Mr. Albert C. Wall,* for the defendant.

STEVENSON, V. C. (orally).

In the case of August Menge, complainant, and the Morris and Essex Railroad Company et al., defendants, the conclusion I have reached is, that the motion for a preliminary injunction will be denied, upon condition that the railway company deposit forthwith, within a time to be named in the order, in the court of chancery, an amount of money to be fixed by the order, which will guarantee to the complainant the just compensation which he is entitled to receive for land which the railway company is now occupying and which it proposes to take permanently for its railroad, and upon the further condition that the railroad company will diligently prosecute the present condemnation proceedings which it appears to have instituted, the complainant having the right at all times to apply again to this court in this cause for an injunction in case of any violation of these conditions.

The principle which I apply to this case I shall endeavor, briefly, to explain, although I have had occasion to lay it down and apply it in another case very recently (the case of *Nelson* v. *New Jersey Short Line Railroad Co., 67 Atl. Rep. 1032*), in which case an appeal is now pending in the court of errors and appeals. The court of errors and appeals may make a deliverance in that case which will necessarily lead to a different result in this present case, but all that I can do at present in this case is to follow the ruling which I made in that case after very careful examination of the authorities and consideration of them as well.

No doubt it is true that, as a general rule, a private property owner is entitled to an injunction to restrain a corporation from unlawfully taking his land—a railway corporation, for instance. The general principle is well settled that a railway corporation will not be permitted to take property for the uses of its railway without making just compensation first, and that the remedy of the property owner, whose constitutional right is invaded, or threatened to be invaded, is by an injunction, and that the injunction will issue, as the authorities hold, not upon the same principles which apply to the issuing of an injunction to restrain an ordinary trespass. The injunction will issue to enforce the constitutional right of the property owner against dangerous aggression and in order to keep corporations within the limits of their powers. That is the principle which was enunciated in the case of *Pratt* v. *Roseland Railway Company,* reported in *50 N. J. Eq. (5 Dick.) 154,* in which Vice-Chancellor Van Fleet quotes with approval and adopts the following language from Mr. Kerr in his *Treatise on Injunctions:*

"A private person who applies for an injunction to restrain a public incorporated company from entering illegally on his land, is not required to make out a case of destructive trespass or irreparable damage. The inability of private persons to contend with these powerful bodies, which have often large sums of money at their disposal and are often too prone to act in an arbitrary and oppressive manner, raises an equity for the prompt interference of the court to keep them within the strict limits of their statutory powers and prevent them from deviating in the smallest degree from the terms prescribed by the statute which gives them authority."

Now, this statement is from Mr. Kerr and it was applicable to a right under an English statute. Some authorities think that the principle should be applied even more rigidly in this country, in view of the fact that the right which the court is asked to protect is a constitutional right. I do not quite follow the reasoning of the authorities in regard to this matter, but that is a view which has frequently been expressed.

Vice-Chancellor Van Fleet continues: "Other authors state the rule in substantially the same way," citing *High on Injunction* and *Lewis on Eminent Domain,* and concludes in the following language:

"This rule has been repeatedly recognized in this state, notably so by Chancellor Pennington in *Ross* v. *Elizabethtown and Somerville Railroad Co., supra,* and by Chancellor Zabriskie in *Stevens* v. *Paterson and Newark Railroad Co., 20 N. J. Eq. (5 C. E. Gr.) 126, 129,* and by Chancellor Runyon, in the *Morris and Essex Railroad Co.* v. *Hudson Tunnel Railroad Co., 25 N. J. Eq. (10 C. E. Gr.) 384, 387.* I think I am bound to regard it as the established law of this court.

"An injunction must issue restraining the corporate head from further constructing its railroad on the land in question, until it shall have made just compensation to the complainant for his estate in the same."

The authority of this decision of Vice-Chancellor Van Fleet certainly seems to have been impaired by what subsequently occurred. The case was a motion for a preliminary injunction and was heard in the usual way on order to show cause. There is no suggestion that there was any final hearing in the court of chancery, and the vice-chancellor's opinion concludes that an injunction—that is to say, a preliminary injunction—should issue. From the order for this preliminary injunction an appeal was taken to the court of errors and appeals, where the cause appears to have slumbered for five or six years. The only report of the case in the appellate court is found in *58 N. J. Eq. (13 Dick.) 585,* from which it appears that the case was argued at the March term, 1899, but no decision appears to have been rendered. A reporter's note states that, on November 14th, 1898, an order was entered reversing the order of the court of chancery for a pre-

liminary injunction and dismissing the bill of complaint, and directing that the record be remitted in order that said decree might be carried into execution. Whether or not this decree directing that the bill should be dismissed was entered after a settlement by consent does not appear. It may be that the court of errors and appeals, on reviewing a motion for a preliminary injunction, condemned the bill on its merits as if the case were heard on a demurrer, and without giving the complainant an opportunity to amend, pronounced a final decree dismissing the bill in accordance with the practice followed by Chancellor Runyon, in *Dusenberry* v. *Newark, 25 N. J. Eq.* (*10 C. E. Gr.*) *295,* and some other similar cases. I have not examined the original files in the court of chancery and the court of errors and appeals, in order to learn precisely what action the court of errors and appeals took in disposing of the case in the way I have mentioned. However this decree dismissing the bill on the merits came to be entered, I think that the general statement which I have read from the opinion of Vice-Chancellor Van Fleet is recognized as law in this state and very generally throughout the country. But, in my judgment, it applies only to those cases where the corporation is willfully and intentionally proceeding in violation of the constitutional right of the property owner. It is said that the purpose of the rule is to keep corporations in their place, to keep them from high-handed aggression; but there are very many cases which arise where, without any intent to violate the rights of the private property owner, the corporation unfortunately finds itself in the position of being a trespasser.

Well, it has to take the consequences in such a case. It is liable to an action at law for damages; it may be liable to an action for damages every day; it may be liable to an action of ejectment. The question is whether it is liable to an injunction which will paralyze its operation and may stop the construction of a great public work. I do not understand that the rule of practice, laid down by Vice-Chancellor Van Fleet and all other authorities, leads to any such conclusion.

In the case of *Nelson* v. *New Jersey Short Line Railroad Company,* the case now pending in the court of errors and appeals,

*67 Atl. Rep. 1032,* the regular condemnation proceedings were started by the railroad company. They laid out their route through a large farm, and after paying the amount awarded by the commissioners into the court of chancery, they went to work laying their rails and constructing their roadbed. The owners of the farm (a number of tenants in common, according to my recollection), were made parties to the condemnation proceedings. There was, however, a man in possession of the farm who may have been regarded by the agents of the railroad company as a mere caretaker, or a mere employe of the owners. This man, by mistake, was not made a party to the condemnation proceedings. There was no question that the agents of the company had in good faith endeavored to make all parties entitled to any share of the award parties to the proceedings, but this person somehow was overlooked. It was a clear case of mistake. This man then (the complainant, Mr. Nelson) filed his bill to enjoin the occupation of his property by the railroad company and presented a lease for a year to himself from the owners, with the right to an extension. He had an undisputed right to the possession of the property; he had a legal estate in it; he was openly and notoriously in possession. The railroad company, however, had acted in good faith and had instituted condemnation proceedings to ascertain the value of the land, which means the value of the land itself, the sum total of all the possible estates of all the owners, including this tenant, Mr. Nelson, in the land taken, and had paid the entire amount of the award, about $6,000, into court. None of the substantial owners made any objection, or if they made objection the proceedings had been conducted to a finish. The money in court represented the actual value of the whole land as between the railroad company and those who had been brought into the condemnation proceedings, but the whole proceeding was void as to Mr. Nelson, this tenant of the property, and he insisted that the well-settled, hard and fast rule was that the railroad company was liable to an injunction restraining it from taking his property without first making just compensation for the same.

But in view of the fact that the railroad company had the right to condemn the land which it had taken, and had in good

faith instituted condemnation proceedings of which it had intended and endeavored to notify all the parties interested, and had paid the award of the commissioners into court, and that such award necessarily included a sum which represented the value of Mr. Nelson's entire leasehold estate if it had any substantial value, I held that the general rule was not applicable, even though Mr. Nelson was not bound by the award, and was therefore not bound to accept any portion of the award as the ascertained value of his property and the ascertained extent of his damages. The application for the injunction was therefore denied, upon condition that the defendant corporation would forthwith deposit a sum of money in the court of chancery amply sufficient to cover all possible claims of Mr. Nelson, and also institute condemnation proceedings to which Mr. Nelson would be made a party.

I think it is a mistake to suppose that any man has an absolute right to an injunction, merely because his constitutional right is invaded. What is a constitutional right? How does it differ from a right under the common law or under a statute? Is it more sacred? The distinguishing feature of a right created directly by a constitutional provision seems to be that such right is guarded from attack or interference of any kind by the legislature, or any other governmental agent of the state. It does not follow, however, that if a man has a constitutional right the invasion of that right calls for any remedy different from that to which he would be entitled in case his right were based solely upon the common law, or upon a statute. It has been suggested that unless a court of equity will in every case enjoin a corporation from appropriating or occupying property without first making the just compensation provided by the constitution, the constitutional safeguard is nullified. In other words, it is claimed that the writ of injunction is practically the only method of enforcing the constitutional provision requiring compensation to be made before the property is taken.

This view, it seems to me, is clearly fallacious. Common-law rights are generally recognized and enforced by remedies which are compensatory; the instances in which rights are specifically enforced and the invasion of those rights prevented are com-

paratively few. The constitution provides for compensation before appropriation. If a corporation appropriates before making compensation its action is illegal, and the party injured has various appropriate actions at law for the recovery of damages and the restitution of his property. Whether the trespass of the corporation—the illegal appropriation of property by it—will be restrained by an injunction out of a court of equity is a matter, it seems to me, to be examined and decided without reference to the origin of the right which the corporation is proposing to violate.

As is illustrated in the language of Mr. Kerr, quoted by Vice-Chancellor Van Fleet, precisely the same question as to the use of the writ of injunction in cases of this kind comes up in England where there is no question of constitutional law involved, where an omnipotent parliament has the power, if it sees fit to exercise it, to authorize the taking of private property for public use before making compensation therefor, or even without making any compensation at any time.

In the case now before the court, it may be conceded that if the railroad company willfully and deliberately, with full knowledge of all the facts, undertook to run its road under and through the complainant's property, this court ought to stop it by an injunction and pay no heed to arguments which are effectually addressed to the court to prevent the issuing of a writ of injunction to restrain an ordinary trespass. Excluding from consideration the constitutional right of the complainant, it has not been argued that there are any circumstances in this case which would entitle the complainant to a writ of injunction to restrain the trespass of which the defendant corporation appears to be guilty. The complainant is not disturbed in the possession of his property, and does not seem to be practically injured in any way by what the defendant has done. The utmost possible damage to the complainant is very slight. His remedies at law, including an action of ejectment and an action for damages, seem to be adequate. In case the railroad company should be ejected—should not succeed in acquiring title in any way—the complainant will be restored to the full possession of

his property. All these considerations are to be disregarded, as seems to be well settled, if it appears that the railroad company has intentionally undertaken to appropriate the complainant's property without first rendering him the just compensation to which he is entitled.

Now that is not this case at all. I am thoroughly satisfied from the proofs that the railroad company in good faith endeavored to have the complainant receive full compensation for his property before they began to run their tunnel through it. Undoubtedly, the case would be very different if the railroad company were appropriating or occupying the surface of the complainant's land, or in any way disturbing the complainant's occupation or use of that land. It must be borne in mind that the railroad company is boring its tunnel through solid rock fifty feet below the surface without in any way affecting the enjoyment of the use of the complainant's building. The evidence shows clearly that the defendant had no intention to evade its duty with reference to compensating the complainant, but, on the contrary, at every stage of the construction of its tunnel had good reason to believe that an adjustment would be made without litigation and without expense by which the complainant would receive the ample compensation which the defendant stood ready and willing to pay him, and was amply able to pay him at any time.

There was also a very strong indication, I think, that the complainant was not prompt in bringing his suit for an injunction, but allowed the defendant to delay condemnation proceedings upon the assurance which the complainant's conduct seemed to give, that the amount of the complainant's compensation would be fixed by agreement between the parties interested. The defendant corporation ought not to be punished because it made a mistake in perfect good faith in adjudging that no condemnation proceedings would be necessary. The defendant, manifestly relying upon the assurance of a satisfactory voluntary settlement which seemed to be indicated by the conduct of the complainant, brought its tunnel up to the line of his property and then, in daily expectation of a settlement, carried the tunnel

very nearly through the complainant's property before he made complaint to any court. The complainant now undertakes, I think, to apply a very harsh rule to the situation: He asks a court of equity to subject the defendants to the very great inconvenience and expense of suspending work on its tunnel until the proceedings for condemnation can be conducted to an award which can be paid into court.

The rule which allows an injunction to restrain corporations from willful and intentional violation of the constitutional rights of property owners is not, in my opinion, applicable to this case. The defendant corporation, although legally a trespasser and liable to be ejected and to be mulcted in damages in the law courts, has become such trespasser, to a certain extent, by mistake, having delayed the institution of condemnation proceedings under a *bona fide* expectation founded, in a large degree, upon the conduct of the complainant that compensation satisfactory to the complainant would be voluntarily accepted by him, and that, therefore, condemnation proceedings would be unnecessary.

For the reasons which I have endeavored to set forth, my conclusion is that no preliminary injunction is proper in this cause, and that the complainant should be left to his remedy at law; provided, however, as I stated at the start, the railway company will prosecute the condemnation proceedings with diligence and effect, and will forthwith—within a few days, say, five or ten days—pay into the court of chancery a sum to be named in the order which will guarantee the cash compensation which the complainant is entitled to receive.