## MEYER C. NELSON

*v.*

## NEW JERSEY SHORT LINE RAILROAD COMPANY et al.

[Decided September 28th, 1907.]

1. Where a railroad company attempts to take property for railroad purposes without first making compensation, the property owner may, in general, obtain relief by injunction without facts showing inadequacy of his remedy at law.

2. The rule that an injunction will issue to restrain a railroad from taking property without first making just compensation applies, as a matter of right, where the railroad company is guilty of willful and intentional aggression, but where it has intended in good faith to comply with the law, but finds itself by some accident or mistake in the position of a trespasser, whether an injunction shall issue, is to be determined on the rules applied to an injunction to restrain an ordinary trespass.

3. Where a lessee of land sought to be condemned for railroad purposes was not a party to the condemnation proceedings, he was not bound thereby, but was entitled in a subsequent proceeding to which he was a party to show that a substantially larger sum was justly due him for the value of his property and the amount of his damages than the residue of the fund paid into court in the prior proceedings which would remain after the owners, who were parties, had received their shares.

4. Where the owner of a valuable leasehold on property sought to be condemned for railroad purposes was by mistake not made a party to condemnation proceedings, and the railroad, while a trespasser as to him in taking the property, had not intentionally or willfully violated his rights, he was not entitled to restrain the railroad's use of the land until his claim had been satisfied, where the railroad paid into court a sum sufficient to satisfy such claim and proceeded with reasonable diligence to condemn his rights.

On motion for ·a preliminary injunction. Heard on bill and affidavits and answering affidavits.

*Mr. Ephraim Cutter,* for the complainant.

*Mr. Willard P. Voorhees,* for the defendants.

STEVENSON, V. C.

After learning that an appeal had been taken in this case from the order advised by me denying the motion for an injunction on terms, it became my duty to set forth in writing the reasons for the order which I had advised. Before undertaking this work, a motion for a preliminary injunction to restrain a railroad company from appropriating land before making compensation therefor was argued before me in the case of *Menge* v. *Morris and Essex Railroad Co., 67 All. Rep. 1028.* The argument and disposition of this motion involved the consideration of practically everything which had been presented and discussed in this *Nelson Case,* except the definition of the conditions to which the defendant must submit in order to prevent the issuing of an injunction. The opinion in the *Menge Case,* which has recently been filed, follows the decision in this case and discusses the same at some length, and might perhaps be referred to as a sufficient statement of the reasons which, in my judgment, sustain the order made in this case from which the appeal has been taken.

In each of these cases the defendant, a railroad corporation, stood before this court as a trespasser, and the trespass consisted in the attempted appropriation of lands of the complainant for the defendant's railroad in violation of the constitutional and statutory rules which protect private property owners against injustice and oppression on the part of corporations.

The general rule was recognized that the writ of injunction will go to restrain such a trespass even in the absence of any facts showing the inadequacy of the complainant's remedy at law. *Pratt* v. *Roseland Railroad Co., 50 N. J. Eq. (5 Dick.) 150* (1892), and cases cited (at *p. 154*); *1 Pom. Rem. 762; Kerr Inj. (4th ed.) 85 (1903); Lew. Em. Dom. § 631; Morris Canal Co.* v. *Jersey City, 26 N. J. Eq. (11 C. E. Gr.) 294 (1875); Hart* v. *Leonard, 42 N. J. Eq. (15 Stew.) 417, 419 (Court of Errors and Appeals, 1886); Township of Franklin* v. *Nutley Water Co., 53 N. J. Eq. (8 Dick.) 601, 606 (1895).*

In 1871 Chief-Justice Beasley, sitting for the chancellor, expressed a doubt whether the modern English doctrine above set forth had been adopted in New Jersey. *Erie Railroad Co.* v. *Delaware, Lackawanna and Western Railroad Co., 21 N. J. Eq.*

(*6 C. E. Gr.*) *283, 292.* I think, however, that notwithstanding the peculiar reversal of Vice-Chancellor Van Fleet's decision in *Pratt* v. *Roseland Railroad Co., supra,* by the court of errors and appeals, without opinion or explanation, *58 N. J. Eq.* (*13 Dick.*) *585,* the modern English doctrine has been repeatedly recognized as in force in this state especially since the decision of the court of errors and appeals in *Hart* v. *Leonard, supra.*

The rule under consideration, however, seems to rest upon the policy of restraining corporations from willful and intentional aggression as the authorities above cited amply show. But where the appropriation of the complainant's property is not of such a character, where the corporation has intended in good faith to comply with the law but finds itself by some accident or mistake in the position of trespasser, the reason for the general rule, to a large extent, seems to fail, and the question whether or not an injunction should issue remains to be determined after due weight has been given to those considerations which are deemed important or controlling in all cases where a preliminary injunction is applied for to restrain an ordinary trespass. *Wood* v. *Charingcross Railway Co., 33 Beav. 290* (*1863*) ; *Pickert* v. *Ridgefield Park Railroad Co., 25 N. J. Eq.* (*10 C. E. Gr.*) *316* (*1874*) ; *Lanterman* v. *Blairstown Railroad Co., 28 N. J. Eq.* (*1 Stew.*) *1* (*1877*) ; *Mettler* v. *Easton, &c., Railroad Co., 25 N. J. Eq.* (*10 C. E. Gr.*) *214* (*1874*) ; *Ocean City Railroad Co.* v. *Bray, 57 N. J. Eq.* (*12 Dick.*) *164* (*1898*). See, also, *Peck* v. *Schenectady Railway Co., 170 N. Y. 298* (*1902*), and the line of cases in New York known as the *Elevated Railway Cases, 90 N. Y. 122; 104 N. Y. 269; 122 N. Y. 1,* and *125 N. Y. 186.*

In such a case, *i. e.,* where there has been no willful or intentional violation of the complainant's rights, if the defendant corporation has the right to condemn the complainant's land and stands ready to institute and diligently prosecute condemnation proceedings, and also to pay into this court a sum of money sufficient to cover any possible award which may be made to the complainant in the condemnation proceedings, it would seem that the complainant is placed in substantially the same position that he would have occupied if the defendant had proceeded originally in strict compliance with all constitutional and statutory require-

ments. It would also seem that the case does not call for any punitive application of the law to the defendant corporation on account of any willful aggression on its part so as to make it necessary that both the corporation and the public should suffer from the temporary suspension of an important public work. An injunction, it seems to me, in the class of cases under consideration, would do the complainant no good whatever, but only do harm to the defendant corporation and the public, and in some cases a great deal of harm.

Applying these principles which are discussed at some length in the above-mentioned opinion in the *Menge Case* to the present case, the conclusion was reached that the complainant was not entitled to a writ of injunction in the absence of any evidence that his remedies at law were not entirely adequate, provided the defendant would comply with terms which would secure beyond question to the complainant the recognition and enforcement of all his rights.

In regard to the terms upon which the injunction was denied, the propriety of which the defendant challenges by its appeal, little if any explanation is necessary. The complainant's property has not been lawfully appraised, nor has any inquiry been made in regard to his damages. It may be that the sum of money heretofore paid into court includes an amount which would be awarded to him as the value of his land if he waived his constitutional rights and accepted the award precisely as if he had been made a party thereto. It may be that if the complainant declines to accept this award, as he has a perfect right to do, the portion of the fund which he would be able to take will revert to the defendant corporation which paid the same into court. A new condemnation proceeding, to which the complainant is made a party, will then result in ascertaining the value of his estate in the land taken, together with his damages. Whatever may be the status of any possible portion of the fund in court, which represents the value of the complainant's estate and which the other owners therefore cannot obtain for themselves, the fact remains that the defendant, the New Jersey Short Line Railroad Company, a private corporation, has assumed to take the private property of the complainant for the public use

of a railroad "without just compensation first made" to the complainant. The complainant may disregard the condemnation proceedings which have been taken as utterly void as to him, and he may yet in a lawful proceeding to which he is a party, and by which he is bound, show that a substantially larger sum is justly due him for the value of his property and the amount of his damages than the residuum of the fund now in court, which will remain after the owners, who are parties to the condemnation proceedings, have received their shares.

It seems to me that if I have not erred in making the defendant's case an exception to the general rule under which preliminary injunctions are issued against corporations restraining them from appropriating private property before making compensation, the defendant should be allowed the benefit of the exception only upon terms which practically place the private property owner in the same position as if the amount of an award binding upon him had been paid into court. The defendant railroad corporation, while found to have acted in the matter without wrongful intent, without actual intent to violate the complainant's right, nevertheless is not without blame. The affidavits of the defendant, although denying notice of the complainant's occupancy, do not exclude the inference that careful inquiries duly prosecuted might have disclosed the occupancy and probably the lease of the complainant. The defendant corporation is not acquitted of wrong doing by the decision of this court in this case. On the contrary it stands before the court as a trespasser. This court merely adjudges that the railroad corporation is not an intentional or willful trespasser and therefore should not be subjected to the hardship of an injunction, provided, however, this trespassing corporation will comply with conditions which put the complainant in substantially the same position as if he had been made a party to the condemnation proceedings, and his just compensation thus lawfully ascertained had been paid into court. The defendant cannot possibly suffer by the imposition of these terms except so far as it may turn out that the amount of money which it has already paid into court, together with the amount which it now is required to pay, shall exceed the sum total of what is found due to the complain-

ant and the other parties' interests as owners. Any excess, of course, will be repaid to the defendant. It would seem that a railroad corporation which has in fact violated the constitutional rights of a landowner by appropriating his property, ought not to complain of so slight an inconvenience. While the court, it seems to me, should require an amount to be paid which will certainly cover any award which may be made to the complainant, there is no difficulty in fixing an amount which the defendant can pay into court without suffering any very great inconvenience. The deposit of $400 called for in this case does not seem to me to be excessive.

In dealing with the question of the imposition of terms upon which an injunction of the general kind under consideration will be denied, reference may be made to the case of *Attorney-General* v. *Paterson, 60 N. J. Eq. (15 Dick.) 385,* although the situation presented by that case differs widely from the one presented to the court in this case.