Submitted on briefs September 19, reversed and remanded October
10, 1922.

## MOORE *v*. OLCOTT ET AL.

(209 Pac. 498.)

**Bounties—World War Veterans can Borrow from State for Purposes
Other Than Acquisition of Farm or Home.**

Under the rule that a constitutional right cannot be unduly
limited by legislative restriction, the right of a veteran of the
World War, upon giving proper security, to borrow from the state
funds given by the constitutional amendment embodied in Consti-
tution, Article XI–c, is not limited to cases where the borrower
intends to use the money loaned for acquisition of a farm or home,
as distinguished from other purposes, such as the purchase of rail-
way stocks, although Laws of 1921, Chapter 201, Section 7, carrying
the constitutional provision into effect, limits loans made under the
act to cases where the loan should be used in investments looking
toward the acquisition of a farm or home, and although the voters'
pamphlet distributed before the adoption of the amendment argued
that by its adoption World War veterans would be enabled to bor-
row to assist them in acquiring farms and homes for themselves.

From Marion: PERCY R. KELLY and GEORGE G.
BINGHAM, Judges.

In Banc.

The plaintiff, Frank W. Moore, a veteran of the
World War, a resident of the state, and conceded to
possess all of the qualifications requisite to entitle
him to secure a loan under the requirements of Arti-
cle XI–c of the Constitution of Oregon, and Chapter
201, Laws of 1921, applied for such loan to the World
War Veterans' State Aid Commission, the member-
ship of which comprises the above-named defend-
ants. His application was rejected upon the sole
ground that the plaintiff was intending to make an
alleged unlawful use of the money sought to be bor-
rowed, in that he was about to invest the same in the
purchase of railway stocks, and did not intend to use

For authorities discussing the question of construction and effect
of soldiers' bounty laws, see note in 13 A. L. R. 594.

the money for "farm or home loan" purposes, as defendants contend he was required to do before he could be entitled to a loan under the provisions of said act. No objection was made to the sufficiency of the property offered as security for the loan, or that the plaintiff had failed to comply with any of the requirements of the statute, except the intended use of the money sought to be borrowed. After the rejection of said application, proceedings were instituted by the plaintiff in the Circuit Court for Marion County, resulting in the issuance of an alternative writ of *mandamus*, to which the defendants answered, setting up as a defense the alleged unlawful use to which the plaintiff intended to apply the money. To this answer a demurrer was interposed and overruled, and from a judgment entered dismissing the writ, plaintiff appeals.      REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Wilson & Guthrie, Mr. Cicero F. Hogan* and *Mr. MacCormac Snow.*

For respondents there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. J. A. Benjamin,* Assistant Attorney General.

RAND, J.—The sole question presented is whether the defendants can lawfully reject an application for a loan upon the ground that the applicant will use the money borrowed for purposes other than to acquire a farm or a home as provided by Section 7, Chapter 201, Laws of 1921, which reads as follows:

"Any person fully qualified to receive either a loan or bonus hereunder shall have the option of electing to take either a cash bonus or to receive a farm or home loan, but no person shall be entitled to both a cash bonus and a farm or home loan."

Section 1 of the act recites that:

"The State of Oregon, for the purpose of assisting in the industrial rehabilitation of, and providing farm or home aid for, residents of the state who served in the World War, shall pay to each person qualified as hereinafter provided a cash bonus, or shall lend to each person so qualified a sum of money, in the amount and according to the conditions hereinafter contained."

Under the provisions of Section 1, there seems to be no distinction in the use the applicant should make of the money, whether received as a cash bonus, or procured by means of a loan. He might apply it for the purpose of rehabilitating himself, or as an aid in securing a farm or a home.

From the foregoing provisions it clearly appears that the legislature intended to limit and restrict loans made under the provisions of the act to cases where the money loaned should be used in making investments, looking to the acquisition either of a farm or a home. But the expenditure by the state of the sums authorized by Chapter 201, Laws of 1921, were beyond the power of the legislature, because requiring the loaning of the credit of the state in excess of the amount authorized by Section 7, Article XI of the Constitution. To provide the requisite authority to empower expenditures for that purpose, the legislature proposed Article XI-c, which, upon its adoption, authorized such expenditures. Article XI-c, however, in itself, and by its own terms, enumerated all of the qualifications which an applicant must possess to entitle him to the right to elect whether to receive a bonus or a loan, possessing which, he was entitled to exercise such right. By the possession of the qualifications thus enumerated his right itself became absolute. This entitled the applicant, upon complying

with all of the requirements of Chapter 201, and giving the requisite security, to acquire a loan from the state.

The constitutional amendment itself contains no limitation upon the applicant's right to dispose of the money to be borrowed thereunder.

The word "loan" as used, implies an obligation upon the part of the applicant to repay the money. By necessary implication, the constitutional provision conferred upon the legislature and upon the commission appointed pursuant to the provisions of the act, the power to provide the terms upon which the loan should be made, the rate of interest the same should bear, and the class and kind of security which must be given to secure the repayment of the loan.

In order to protect the state from loss, by the exercise of this power necessarily a wide latitude of discretion is vested in the legislature and in the commission appointed pursuant to the act. In the exercise of this power, as long as the legislature enact laws and the commission adopt rules and regulations that are applicable to all alike, and place no unreasonable or arbitrary restrictions upon the enjoyment of the right created by the Constitution, such laws and such rules, being in aid of the constitutional provision, are a valid exercise of the powers conferred, but when the legislature or the commission impose limitations, conditions or restrictions not necessary to the proper exercise of the power, and which, by their terms, either entirely destroy or unreasonably limit or curtail such right, such legislation and such rules are invalid and inoperative.

The provision that a qualified applicant may borrow money for certain purposes perfectly legitimate in themselves, but that such applicant cannot borrow money for other purposes equally legitimate and

equally beneficial to the applicant, is not in aid of the constitutional provision, but is an unreasonable curtailment of the constitutional rights of the applicant, and is invalid, since neither express nor implied authority for making such a law or rule can be found in any provision contained in the Constitution.

Those enlisted or called into service during the war came from every occupation in life. In order to carry on their occupations upon their return to civil life, those of them who possessed homes of their own and did not desire to engage in farming, but did desire to engage in business or to enter one of the professions or to take up some trade or employment other than agriculture, were, under the provisions of the Constitution, just as much entitled to borrow money to enable them to carry out such purpose as those who desired to engage in farming. There is no more reason why one should be excluded from borrowing money to aid him in carrying out such purpose than there is for excluding one who desired to engage in agriculture. It was not, therefore, within the power of the legislature to provide by enactment, or of the commission to provide by rule, that a qualified applicant, possessing all of the requisite qualifications to entitle him to a loan under the constitutional provisions, and who tendered, and was prepared to give the security as provided by Chapter 201, Laws of 1921, for the repayment of the loan, could not obtain a loan merely because he desired to invest the money borrowed for a purpose other than the purchase of a farm or a home.

We are not concerned with the wisdom of the law permitting the loaning of money secured from the sale of state bonds to veterans of the World War for speculative purposes; that question was settled by

the adoption of the constitutional amendment which was proposed by the legislature and was adopted by the vote of the people. We are only concerned with the interpretation of the plain provisions of the amendment itself. The language of the amendment is clear and free from ambiguity. By giving to the words used their usual and ordinary meaning, the intent of the amendment is plain, and nothing is left for construction. The amendment in part reads as follows:

"Any male or female who was enlisted, inducted, warranted or commissioned after June 3, 1915, and who has served honorably in active duty in the army, navy or marine service of the United States at any time between the sixth day of April, 1917, and the eleventh day of November, 1918, and who at the time of entering into such service was a resident of the state of Oregon and who has been honorably separated or discharged from said service or has been furloughed to a reserve, shall be entitled to receive from the proceeds of such bonds as a cash bonus the sum of $15 for each month or major fraction thereof that such person was in active service between the sixth day of April, 1917, and the eleventh day of November, 1919, not exceeding a total of $500, or shall be entitled to borrow from said funds not to exceed $4,000, which loan shall be secured by a mortgage upon real estate in an amount not exceeding 75 per cent of the appraised value of said real estate, but which loan may be reduced by statute."

"The distinguishing feature of a right created by a constitutional provision seems to be," said the court in *Menge* v. *Morris etc. Co.,* 73 N. J. Eq. 177, 183 (67 Atl. 1028), "that such right is guarded from attack or interference by the legislature or any other governmental agent of the state." Limitations on the legislative power may arise by implication, "thus,

where a Constitution prescribes the qualifications of electors, the legislature cannot require additional qualifications." 6 R. C. L., p. 40, § 34.

We think the rule sustained by all of the authorities is, that where a constitutional provision creates a right and prescribes the qualifications which must be possessed to entitle one to enjoy such right, the legislature can neither add to nor subtract from the qualifications thus prescribed in determining who are entitled to the enjoyment of such right. Nor can the legislature impose any conditions, limitations or restrictions upon the enjoyment of a right created by the Constitution which, in their operation, necessarily constitute an undue interference with the enjoyment of the right so created.

In conformity to this principle, we held in *Faulman v. Olcott et al., post,* p. 452, on this day decided, that as Article XI–c prescribed the qualifications of all applicants who should be entitled to the payment of a cash bonus, one of which was that the applicant must have been "enlisted, inducted, warranted or commissioned" after June 3, 1915, that Faulman, who had enlisted in the regular army before June 3, 1915, under an enlistment for a period of seven years, and who had not been discharged before June 3, 1915, and had, subsequent to that date, been called back to the military service of the United States, was not entitled to the payment of a cash bonus notwithstanding that the words "June 3, 1915" had by Chapter 201 been eliminated from the qualifications as prescribed by Article XI–c; that his possession of the qualifications prescribed by statute was not sufficient upon constitutional grounds to entitle him to the payment of a cash bonus unless they included all of the qualifications required by the Consti-

tution. The reason for so deciding was, that where a constitutional provision specifically enumerates or describes the class of persons who shall be entitled to receive money out of a fund created thereby, the legislature is without power to direct the payment of such funds or any part thereof, to any person unless such person is one of those so enumerated or described.

The only argument offered in support of defendants' position outside of the fact that Section 7 of said act so provides is that the voters' pamphlet distributed to the voters of the state pursuant to law, before the adoption of the amendment, contained an argument in favor of its adoption, wherein it was stated by the proponents of the amendment that by its adoption the veterans of the World War would be enabled to borrow moneys to assist them in acquiring farms and homes for themselves, and thereby the material development of the state would be greatly advanced. It is possible, and perhaps probable, that this argument appearing at that time in the voters' pamphlet may have induced many persons to vote for its adoption, who otherwise would have voted for its rejection, but this affords no sufficient reason why the plain provisions of the amendment, that are entirely free from ambiguity or doubt, should be construed differently from the way they would have been had such argument not been made.

For these reasons the demurrer to the answer should have been sustained, and the judgment entered will be reversed and the cause will be remanded to the lower court for such other proceedings as are not inconsistent herewith.          REVERSED AND REMANDED.