## No. 15,132.

ZAVILLA ET AL. *v.* MASSE ET AL.

(147 P. [2d] 823)

Decided March 27, 1944.

Mr. Samuel D. Menin, for plaintiffs in error.

Mr. E. M. Eagleton, Mr. George M. Cherrie, Mr. E. H. Steinmeyer, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THE school board of school district No. 21 of Rockvale, Fremont county, Colorado, on the twenty-first day of October, 1941, by motion, adopted the following rule: "That all children who enroll in our public school must pledge allegiance to the Flag of the United States of America, and that all pupils refusing to take part in any patriotic exercises shall be expelled or refused enrollment, * * * "

Plaintiffs in error, to whom we herein refer as plaintiffs, being members of a sect known as Jehovah's Witnesses, and believing that compliance with the foregoing rule would be a violation of one of the commandments of Almighty God, and particularly of the following contained in the Bible in the twentieth chapter of Exodus: "Thou shalt have no other gods before me. Thou shalt not make unto thee any graven image, or any likeness of anything that is in heaven above, or that is in the earth beneath, or that is in the water under the earth: that thou shalt not bow down thyself to them, nor serve them:" refused, on account of such asserted religious scruples, to comply with the rule and were expelled from school.

Plaintiffs brought an action in the nature of mandamus to compel the board to rescind its action in expelling them, and to reinstate them, alleging that their expulsion was contrary to, and in violation of, the provisions of section 4, article 2 and section 8, article 9 of the Constitution of the State of Colorado, which are as follows, respectively:

"That the free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his opinions concerning religion; but the liberty of conscience hereby secured shall not be con-

strued to dispense with oaths or affirmations, excuse acts of licentiousness or justify practices inconsistent with the good order, peace or safety of the state. No person shall be required to attend or support any ministry or place of worship, religious sect or denomination against his consent. Nor shall any preference be given by law to any religious denomination or mode of worship."

"No religious test or qualification shall ever be required of any person as a condition of admission into any public educational institution of the state, either as a teacher or student; and no teacher or student of any such institution shall ever be required to attend or participate in any religious service whatever. No sectarian tenets or doctrines shall ever be taught in the public schools, nor shall any distinction or classification of pupils be made on account of race or color."

Defendants, defendants in error, moved to dismiss the complaint on various grounds, the general purport of which is that the action required by the rule of the board is not a religious exercise and that compulsory compliance therewith does not infringe the petitioners' constitutional rights. The motion was sustained and the cause dismissed.

No federal question is directly involved, for petitioners assert in their complaint only that their rights under the Constitution of the State of Colorado have been infringed. The parallel provisions of the federal Constitution are as follows: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof;" First Amendment. "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;" Fourteenth Amendment.

■ From the fact that the Fourteenth Amendment operates to prohibit the states from doing what Congress was prohibited from doing by the First Amendment to the Constitution: namely, making any law respecting

the establishment of religion or prohibiting the free exercise thereof, it follows as a necessary corollary that a state constitution cannot be effective as against the prohibition of the federal Constitution when a federal question is raised, to permit a greater restriction of the exercise and enjoyment of religious profession and worship than is permissible under the federal Constitution. For this reason the cases involving the federal question, while not controlling, should receive our careful consideration in construing our state Constitution. When this action was instituted, the Gobitis case *(Minersville School District v. Gobitis,* 310 U. S. 586, 60 Sup. Ct. 1010, 84 L.Ed. 1375, 127 A.L.R. 1493) was the last word of the United States Supreme Court construing the federal constitutional provisions, and it is evident that plaintiffs in the instant case framed the issues to avoid the effect of that case by not raising a federal question. Since that time, the Gobitis case has been specifically overruled by the Supreme Court in the case of *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 Sup. Ct. 1178, 87 L.Ed. 1171. This latter case involved similar action by a school board of the state of West Virginia. If we adopt the reasoning of the Supreme Court in that case as applicable to our state Constitution, and the instant case, it necessitates a reversal.

█ █ Since it is the duty of state courts to uphold and support the Constitution of the United States as construed by the highest judicial tribunal of the country, we should not construe our state constitutional guarantee of religious freedom as permitting a restriction on the free exercise of religion that would be contrary to the federal Constitution as so interpreted, unless required by the plain language thereof so to do. We need not, and do not, rest our decision on the authority of the last pronouncement of the United States Court alone, for we are of the opinion that without reference to the federal Constitution or to either of

the foregoing cases decided by the Supreme Court of the United States, the action of the school board here attacked, could not be sustained under our state Constitution.

We think it cannot be doubted under the pleadings and the record before us, that plaintiffs honestly entertain scruples against doing the act enjoined by the board's resolution. For failing to comply with the requirement of the rule, plaintiffs have been expelled from the public school and denied the privileges thereof.

■ It is too clear to require the citation of authorities, though authorities are not lacking, that the right to attend the public schools is a civil right or privilege. Section 290, c. 146, vol. 4, '35 C.S.A., provides: "Every public school shall be open for the admission of all children between the ages of six and twenty-one years, residing in that district without payment of tuition; * * * "

Article IX, section 2 of the Colorado Constitution provides for the establishment and maintenance of a "system of free public schools throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously, * * * "

In *Florman v. School District No. 11*, 6 Colo. App. 319, 40 Pac. 469, that court said: "The education of the children of the state is a duty which devolves upon the state government."

"The parent has a constitutional right to have his children educated in the public schools of the state. Colo. Const. Art. IX, sec. 2. He also has a constitutional right, * * * to direct, within limits, his children's studies." *People ex rel. v. Stanley*, 81 Colo. 276, 255 Pac. 610.

In *Bowles v. Habermann*, 95 N.Y. 246, is the statement: "Ordinarily, they [civil rights] must mean all those rights which the law gives a person—which depend upon the laws of the community in which he lives and of which he is a member."

█ Unauthorized expulsion of pupils from school under our laws, Constitution and decisions, deprives them of a civil right. In the instant case plaintiffs were denied the civil right to attend the public schools because of their opinion that it is a violation of one of God's commandments to salute the flag, and their consequent refusal to do so. They contend that their opinion concerning this matter is, in the constitutional sense, a religious opinion, and we think their contention is supported by our Constitution and laws.

█ A religious opinion is purely subjective; no physical examination so far devised will disclose its existence. Only one person, the one who asserts that he holds the opinion, can testify directly and with knowledge of the fact of its existence or nonexistence. It is, in the sense that it is subjective, like intent in a criminal case. The defendant alone has knowledge and can testify directly as to the existence or nonexistence of intent. Otherwise, whether it exists must be determined from surrounding circumstances capable of proof. In the instant case, plaintiffs are competent witnesses to establish the opinions they hold. They assert that they have a religious opinion or conviction that they violate if they salute the flag. They suffered expulsion from school and deprivation of school privileges by asserting such opinion and by refusing to comply with the regulation. They have undergone the inconvenience of bringing an action in court and have assumed the expense thereof to secure the right to attend the public schools without being obliged first to change or violate their opinion as to their religious duty to obey the first commandment as they understand it. Their conduct is consistent with their assertion of such opinion and the sincerity thereof. In the light of this situation, may we say that they do not entertain an opinion that they should obey the first commandment, and that in obedience to it, they should not salute and make a pledge of allegiance to the flag, and that such opinion does not

arise from their conception of the duty that is required of them by the God they worship? We may not, and should not, determine by judicial pronouncement that their conclusion as to what they may not do without violating the first commandment, is not a religious opinion.

Counsel for defendants, in summarizing their argument, say: "Plaintiffs were not expelled on account *of any opinion they held concerning religion but because the plaintiffs refused to conform to the patriotic ceremony of a salute to the flag as required by the School Board;* that such a ceremony has nothing whatever to do with religion and that plaintiffs cannot arbitrarily designate it as a religious ceremony." (Italics ours.)

In so stating the case, counsel evade the real issue. Plaintiffs, as we understand their position, are not contending that they did not violate the rule, nor that *under the rule* they were not subject to expulsion. Their contention is in the nature of confession and avoidance; they confess they violated the rule, but assert that they are not subject to the penalty—expulsion and deprivation of their civil right to attend the public school—because the rule conditions the enjoyment of that right on the violation of an opinion they hold concerning religion. It would follow as a corollary that, if there was no authority in the board to make the rule, any effect, any incidental destruction of the morale of other pupils or ineffectiveness in the exercise of saluting the flag as a method of instruction in patriotism arising from plaintiffs' refusal to comply, is not to be attributed to the breach of the rule but to the exercise of unwarranted authority by the board in making the rule.

Plaintiffs, as we understand their position, do not assert, arbitrarily or otherwise, that saluting the flag is a religious ceremony. We assume that the salute is enjoined, as counsel for the board state, "for the purpose of engendering in the youthful mind, a love of country, respect for its institutions and for constituted authority,"

We think this is its purpose; that the rule was adopted as a method or means to teach patriotism and that it has, and can have, no other purpose in a school curriculum. Even so, it is not the only means for accomplishing that end. Before a compulsory salute was ever thought of for our public schools, countless thousands of our citizens, under the promptings of patriotism, offered their services to their country and thousands of them died on the battlefields of the wars in which it has engaged. No compulsory salute was necessary as a means of teaching them patriotism. Patriotism, like religion, is a state of mind; it is a composite of opinions. It is not, nor is religion, something that can be touched, or otherwise perceived by the senses. We cannot assume, under the record before us, for there is nothing in it to so indicate, that plaintiffs are in any way lacking in patriotism, or are disloyal to our government or its institutions. It is not contended that either they or their parents are other than loyal and law-abiding citizens. As we have noted, the sincerity of their opinion is apparent. If it is not an opinion concerning religion when they believe that the Bible is the word of God; that the first commandment is God's commandment and that, as they interpret it, they violate it if they participate in the flag salute, then what is it? We think it is an opinion concerning religion. Whether the exercise is or is not a religious ceremony, is beside the question. Suppose that a school board provided for serving lunches to the pupils at noon and prescribed that the pupils eat at the school dining hall. Pursuant to this, ham sandwiches might be served. Feeding the pupils, and serving ham sandwiches, would not be a religious ceremony. Could it be contended that Jewish children who refused to eat at the public dining hall on any day of the week, or Catholic children who refused to eat there on Friday, might be expelled for disobedience to the rule because they hold, as religious opinions—the Jewish children that they should not eat pork at all,

and the Catholic children that they should not eat meat on Friday?

■ That action dictated by opinions concerning religion may be prohibited if it is licentious or inconsistent with the peace, good order or safety of the state is recognized as a limitation on the practice of religion. Typical of authorities on the subject is the case of *Davis v. Beason,* 133 U.S. 333, 10 Sup. Ct. 299, 33 L.Ed. 637, holding that the practice of polygamy, sought to be justified as a practice of religion, is not, for such reason, permissible under the federal constitutional guarantees of religious freedom. But here we are not concerned with affirmative action or practice sought to be upheld as a valid exercise of religious freedom, but rather with compulsory action enjoined for an educational purpose in which plaintiffs refuse to engage because of their opinion concerning religion. This compulsory action is enjoined for an indirect educational purpose only, not for any direct benefit to the government, such as laws for the raising of revenue, or laws designed for the protection of health or property, compliance with which is of such direct and compelling necessity for the peace, good order and safety of the state that they may be enforced even though they may override the religious scruples of a citizen. No general rule can be laid down for determining whether an action enjoined by law falls within the class above indicated. Each case must be determined on the basis of its particular facts.

■ Is involuntary compulsory compliance with a rule requiring the flag salute as a means of teaching respect for our country and its institutions and the inculcation of a spirit of patriotism, of such efficacy or compelling necessity that we should say, as a matter of law, that it is necessary for the peace, good order and safety of the state? If, in the exercise of religious liberty, one may be restrained in his actions only when his practices are licentious or threaten the good order, peace and safety of the state—and this is the only

constitutional limitation—we think it equally clear that action by him that violates his opinions concerning religion, should not, and constitutionally cannot, be enjoined and compliance compelled, except for equally cogent reasons—that the peace, good order and safety of the state require it.

■ The state Constitution, in addition to the specific guarantees of religious liberty, contains other guarantees of liberty more general in their terms.

Section 3 of article II provides: "That all persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness."

Section 25 of article II is as follows: "That no person shall be deprived of life, liberty or property, without due process of law."

The term "liberty" as used in these sections, connotes far more than mere freedom from physical restraint; it is broad enough to protect one from governmental interference in the exercise of his intellect, in the formation of opinions, in the expression of them and in action or inaction dictated by his judgment, or choice in countless matters of purely personal concern. That the Constitution has specifically mentioned certain other freedoms—of religion, of speech, of the press, of assembly, among others—merely indicates that in the view of the framers of our Constitution these freedoms were of such transcendent importance to the welfare of the individual that their guarantee should not be left to the uncertainty of judicial construction of a general saving clause. Judicial authority is not lacking for the proposition that a law that restricts the freedom of the individual in matters of his purely personal concern either by prohibiting action under penalty, or enjoining upon him action for an avowed objective, cannot be sustained unless there is some appropriate relation

between the legislative command and the prescribed punishment on the one hand, and the avowed objective on the other.

■ Justice Roberts, speaking for the court in *Herndon v. Lowry*, 301 U.S. 242, 258 (57 Sup. Ct. 732, 81 L.Ed. 1066), said: "The power of a state to abridge freedom of speech and of assembly is the exception rather than the rule * * * The judgment of the legislature is not unfettered. The limitation upon individual liberty must have appropriate relation to the safety of the state."

Recognizing that, in the language of the writer of the opinion in the Gobitis case, "The ultimate foundation of a free society is the binding tie of cohesive sentiment," and recognizing also that the admitted objective of the compulsory exercise here resisted is to create and foster a cohesive sentiment of patriotism and respect for our government and its institutions, we cannot shut our eyes to the fact, heretofore noted, that such a sentiment has been, and hence now can be, created and fostered without resort to the method made compulsory by the rule. We think the writer of the opinion in the Gobitis case in his dissenting opinion in the West Virginia case reversing it, answers his argument in favor of the power to enforce the rule when he says: "Of course patriotism cannot be enforced by the flag salute. But neither can the liberal spirit be enforced by judicial invalidation of illiberal legislation." If the method will not accomplish the avowed objective, if the legislation itself is illiberal, by which we assume is meant that it does not accord to plaintiffs that consideration of their rights that a reasonable construction of the Constitution would require, how can it reasonably be said there is any appropriate relation between the act enjoined and its avowed and admitted objective? As a matter of elementary psychology, it is apparent that compelling the expression of a sentiment not felt or the doing of an act that it is feared will subject the actor to punishment hereafter, will not only fail to create

and foster respect for the compelling authority, but will engender a sentiment of rebellion against it. It is not, as we believe, a trespass on the legislative function that enacts or authorizes the promulgation of a rule having such an effect, admittedly establishing a method or means only of attaining an objective than can and has been otherwise attained, to declare that such rule is an unwarranted invasion of the constitutional guarantee of liberty and the guarantee against the deprivation of civil rights and privileges by reason of one's opinions concerning religion, and to hold that as to these plaintiffs the rule is not enforceable.

The judgment is reversed, and the cause remanded for further proceedings which shall be consistent with the views herein expressed.

MR. JUSTICE BURKE and MR. JUSTICE JACKSON concur in the result.