No. 13,266.

MAITLAND *v.* THE PEOPLE.

(23 P. [2d] 116)

Decided June 5, 1933.

Mr. H. W. SEAMAN, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. CHARLES H. QUEARY, Assistant, for the people.

*En Banc.*

Mr. JUSTICE BUTLER delivered the opinion of the court.

L. M. Maitland was convicted of killing a buck deer within the limits of the Colorado State Game Refuge and was fined $25. He challenges the constitutionality of the act creating that game refuge—Session Laws of 1919, c. 99, amended by Session Laws of 1927, c. 108.

It is said that the act contravenes two sections of our state Constitution. No question other than the constitutional question is presented by the record.

 1. Section 25, article 5, of the Constitution, forbids the General Assembly to pass local or special laws for the protection of game or fish. The act in question forbids the killing, etc., at any time, of birds or animals, with certain exceptions with which we are not concerned in this case, within the limits of the game refuge.

(a) It is said that the defendant, who is the owner of a ranch situated within the limits of the game refuge, has a hunting license; that the act makes it a crime for him to kill a deer at any time within the refuge limits, whereas his neighbors just outside the refuge who kill deer during the open seasons designated by our game laws are guiltless of any offense; that the act thus denies to the inhabitants of a certain locality the right to share equally in the privilege enjoyed by the inhabitants of other localities; and therefore that the act is a special act within the meaning of the Constitution. This objection is not sound. All persons, including the defendant, are forbidden to kill, etc., at any time, birds or animals, with certain exceptions, within the limits of a game refuge, and all persons, including the defendant, may kill, etc., at certain times, called open seasons, birds or animals outside of such limits. The act applies to all persons alike. It is not special legislation. *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938.

(b) Counsel for the defendant says that there are other parts of the state, exactly similar to this in character, where birds and animals may be killed, etc., during the open seasons; that no reason exists for setting apart this particular territory as a game refuge that does not

apply with equal force to any one of a hundred other localities in the state; and that the selection of this particular locality was a purely arbitrary act on the part of the General Assembly. There is no evidence to support an inference that the General Assembly acted arbitrarily, or without careful investigation of the conditions. During the past twenty-five years there have been created twenty-four game refuges in this state, the last one having been created by an act approved May 20, 1933. We must assume that the General Assembly selected those locations that were found, after careful investigation, to be best adapted to the purpose. It is not necessary to establish a game refuge in every suitable place in the state, any more than it is necessary to establish fish hatcheries in every place adapted to that purpose. In the very nature of things, there must be a selection.

Illinois, has, as we have, a constitutional provision forbidding the enactment of local or special laws for the protection of game or fish. The legislature of that state enacted a statute authorizing the fish commission to set aside, "at its discretion," such waters within the jurisdiction of the state "as they may judge best as state fish preserves in which it shall be unlawful to fish with any device except hooks and lines." It made it the duty of the commission to "select suitable locations for state fish hatching and breeding establishments" and "to take all measures within their means for the propagation and increase of the native food fishes," etc. In *People v. Diekmann*, 285 Ill. 97, 120 N. E. 490, the statute was attacked as a local and special law in contravention of the Constitution. The court held that it was not open to that objection, saying in part: "Whether laws are general or local or special does not depend upon the number of those within the scope of their operation. They are general, not because they operate upon every place or person in the state, for they do not, but because every place or person brought within the relations and circumstances provided for is affected by the law. It is not necessary in

62

order to make a statute general that it should be equally applicable to all parts of the state. It is sufficient if it extends to all persons doing or omitting to do an act within the territorial limits of the state. * * * A law may be general and yet operative in a single place or places where conditions necessary to its operation exist. * * * The purpose of the act in question is * * * to conserve fish, game and wild fowl, and as such clearly lies within legislative province. * * * Section 25 of the act gives power to the commission to set aside 'such waters within the jurisdiction of this state as they may judge best as state fish preserves.' This provision applies equally to any of the waters under the jurisdiction of the state which the fish and game commission finds should be used for the preservation and propagation of fish. Such portions of the waters of the state may by them be set aside as a state fish preserve, as provided in said act. Such cannot be said to be a local or special law." And see *People v. Walton,* 314 Ill. 45, 145 N. E. 182.

The ownership of wild game is in the state for the benefit of all the people. C. L. §1443; *Hornbeke v. White,* 20 Colo. App. 13, 76 Pac. 926. "The right to kill game is a boon or privilege granted, either expressly or impliedly, by the sovereign authority, and is not a right inhering in any individual." 12 R. C. L. p. 692. The power of the state to make regulations tending to conserve the game within its jurisdiction "is based largely on the circumstance that the property right to the wild game within its borders is vested in the people of the state in their sovereign capacity; and, as an exercise of its police powers and to protect its property for the benefit of its citizens, it is not only the right but it is the duty of the state to take such steps as shall preserve the game from the greed of hunters." *Id.; Hornbeke v. White, supra.*

We conclude that the act in question does not contravene section 25, article 5, of the state Constitution.

█ 2. Counsel says that the act offends against section 15, article 2, which provides that private property shall not be taken or damaged for public or private use without compensation. He thus states his contention: "The inevitable and actual result of this legislation, as is freely admitted by the people in this case, has been that over the period of years since the act was passed all species of wild game, particularly deer, have increased in numbers within the refuge to a far greater extent than upon lands outside the refuge, and growing crops of all kinds upon defendant's lands have been constantly injured and destroyed. It is true that crops upon mountain ranches outside the refuge are more or less subject to damage by deer, but in this case there is presented the question of an increased burden and separate damage to the lands and crops of this defendant as the primary result of this legislation. The passage of this act has in fact caused a damage to the property of this defendant for a public use." But whenever legislative protection is accorded game, some harm usually is done to some person as an incident to such protection. For example, as was said in *Barrett v. State of New York,* 220 N. Y. 423, 116 N. E. 99, "deer or moose may browse on his crops; mink or skunks kill his chickens; robins eat his cherries." But such incidental injuries are not sufficient to render the protecting statute unconstitutional. *Barrett v. State of New York, supra.*

Though it is not essential to the validity of the act in question that compensation should be paid for such injuries, the General Assembly, in 1931, passed an act providing for the payment, out of the state game and fish fund, of claims for damages done to real or personal property "by any wild animals protected by the game and fish laws of the state." S. L. '31, c. 98. No doubt that will afford some relief to the defendant.

We conclude that the act is not in conflict with section 15, article 2, of the state Constitution.

It is not claimed that the deer killed by the defendant

was destroying or injuring the defendant's crops at the time it was killed and that the defendant shot it to save the crops; hence it is not necessary at this time to determine the right of a person to kill, in defense of property, wild animals in a game refuge, or to discuss the cases of *State v. Ward,* 170 Ia. 185, 152 N. W. 501, and *Aldrich v. Wright,* 53 N. H. 398.

As the act in question is not open to the constitutional, objections urged against it, the conviction of the defendant must stand.

The judgment is affirmed.