No. 18,834.

JOSEPHINE VELMA VOGTS *v.* ROSE M. GUERRETTE, ET AL.

(351 P. [2d] 851)

Decided May 2, 1960. Rehearing denied May 23, 1960.

528

Mr. Alan L. Sternberg, Mr. Robert E. Long, Miss Janet K. Southworth, for plaintiff in error.

Mr. Myron H. Burnett, for defendants in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

The parties are here in the same order they appeared in the trial court, and we will so refer to them, or by name. Robert J. Guerrette is the husband of Rose M. Guerrette and plaintiff sought to fix liability as against him under the family car doctrine.

The complaint alleged that plaintiff suffered physical

injuries entitling her to damages as a result of an automobile accident which occurred in March 1956; on this occasion defendant Rose M. Guerrette was driving the automobile owned by her husband; the plaintiff and her three children were passengers in said automobile; that at a point east of Deertrail, Colorado, defendant Rose M. Guerrette drove said automobile "in a willful, wanton, negligent, reckless and careless manner and at a high, dangerous and excessive rate of speed" resulting in said automobile being "violently propelled off of the said highway and into a borrow pit; that at said time and place the plaintiff was a fare-paying passenger."

Defendants answered admitting the accident; denied that there was any "negligence, willful or wanton, or reckless conduct" on the part of Rose M. Guerrette as alleged in the complaint, and futher alleged that plaintiff was a guest in said automobile, within the meaning of the Colorado Guest Statute, C.R.S. '53, 13-9-1. Additional defenses were set forth in the answer which we need not here consider.

Following trial of the action, at which plaintiff's counsel urged the unconstitutionality of the Colorado Guest Statute, plaintiff was permitted to amend her complaint setting forth her contention that the Colorado Guest Statute is unconstitutional. The court directed a verdict in favor of defendants, and the action was dismissed.

Motion for new trial was dispensed with and plaintiff is here on writ of error.

The testimony discloses that defendant Rose M. Guerrette desired to visit relatives in Illinois; that she intended to take her infant child with her; that it was agreed that plaintiff and her three children would accompany her, and await the return of Mrs. Guerrette in order to return to Colorado.

On the day of the accident the four children were in the back seat of the automobile, and becoming unruly were admonished by plaintiff to quiet down. Later Mrs.

Guerrette momentarily took her eyes from the road, turned toward the rear of the automobile and told the children to settle down. At that time the right wheels of the car left the pavement; that plaintiff said "Rose, you are off the pavement" and Mrs. Guerrette immediately turned her attention to the driving and attempted to get the car back on the pavement, was unsuccessful in doing so resulting in the accident.

It is claimed that relationship of host and guest did not exist in this case because there was testimony that Mrs. Guerrette did not care to drive alone and that plaintiff was to pay one-half of the "cost of the gas and oil on the trip."

A careful reading of the record shows that plaintiff was a guest in the Guerrette automobile at the time of the accident. Plaintiff was not being carried for the benefit of Mrs. Guerrette. We find no error in the ruling of the trial court that plaintiff was a guest, and that defendant Rose M. Guerrette was not guilty of the willful, wanton, and reckless conduct in driving the said automobile prerequisite to recovery under the Colorado Guest Statute.

The principal matter urged by plaintiff in her brief and on oral argument is that the Colorado Guest Statute contravenes the Federal and State Constitutions on various grounds.

It is said that the Colorado Guest Statute contravenes Art. II, Secs. 3, 6, 14, 15 and 25 of the Colorado Constitution and the Fourteenth Amendment to the Constitution of the United States.

The Colorado guest statute, C.R.S. '53, 13-9-1, provides:

"No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or loss in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his intoxication or by negligence consisting of

a willful and wanton disregard of the rights of others. * * * "

Counsel for plaintiff contends that this enactment is unconstitutional in that it violates Article II, Section 6, of the Colorado Constitution which provides that "Courts of Justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial, or delay," and relies chiefly upon the dissenting opinion in *Noakes v. Gasier*, 136 Colo. 73, 315 P. (2d) 183. The constitutional question here urged was not raised in that case, but was nevertheless commented upon in the dissenting opinion filed therein, in which it is stated:

"The quoted section of the Constitution (Section 6, supra) embraces the principle of natural justice: that in a republican form of government every man should have an adequate legal remedy for an injurious wrong done to him by another. This constitutional provision is a command to the courts to be open to every person and to afford such person a remedy for injury to him by another, and that such right shall not be denied. A statute contravenes this constitutional provision which would render the court impotent to act where the injunction of the constitutional provision requires that it do act."

The dissenting opinion in *Noakes v. Gaiser*, supra, states that other courts "have held that its intent and purpose is 'to preserve the common-law right of action for injury to person or property, and while the legislature may change the remedy or form of procedure, attach conditions precedent to its exercise, and perhaps abolish old and substitute new remedies * * *, it cannot deny a remedy entirely.' " It goes on to state, "In other words, the effect of the constitutional provision is this, that frozen into our law are those rights to recovery for injury to person, property or character which existed at the time of the adoption of our Constitution."

532

The only jurisdiction in which a guest statute is now held violative of constitutional rights is Kentucky. Both the guest statute and constitution in that state are unlike their Colorado counterparts. Previously Delaware and Oregon had held then existing statutes unconstitutional, but later, as we shall show, it was held that subsequent amendments rendering the statute similar to the Colorado enactment did not contravene any constitutional rights.

If there be a constitutional provision preserving the common law right of action for injury to person or property it must be found elsewhere than in Section 6. A case in point is *Pickett v. Matthews*, 238 Ala. 542, 192 So. 261 where the Alabama guest statute, which is substantially identical with the Colorado statute, was held to be constitutional and not in contravention of Section 13 of the Alabama Constitution which provides "that every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law." The Alabama court in referring to Section 13, makes the following statements:

*"That means that when a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no legal claim for damages to the person or property of anyone except as it follows from the breach of a legal duty.*

"Undoubtedly the right to the remedy must remain and cannot be curtailed after the injury has occurred and the right of action vested, regardless of the source of the duty which was breached, *provided it remained in existence when the breach occurred.* * * *

\* \* \*

*"But Section 13, supra, does not in language, nor intent, prevent the legislature from changing a rule of duty to apply to transactions which may occur thereafter.*

If there exists any such prohibition it must be found elsewhere in the Constitution." (Emphasis supplied.)

 A fortiori Article II, Section 6, of the Colorado Constitution provides that "Courts of Justice shall be open to every person, and a speedy remedy afforded for every injury to person, * * *." As stated by the Alabama court "this provision does not undertake to preserve existing duties against legislative change before the breach occurs."

 The common law of England was not preserved in this state by the Constitution, nor by a subsequent amendment thereto. Its application in Colorado depends upon legislative enactment, and is only of full force and effect "until repealed by legislative authority." C.R.S. '53, 135-1-1. The statutory provision is as follows:

"135-1-1 * * * Common Law of England * * * The common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British Parliament, made in aid of or to supply the defects of the common law prior to * * * (the date is set forth) * * * shall be the rule of decision, and shall be considered as of full force *until repealed by Legislative authority.*" (Emphasis supplied.)

A case construing this enactment is *Colorado State Board of Pharmacy v. Hallett,* 88 Colo. 331, 296 Pac. 540, wherein the court stated:

"At the first session of the legislature of Colorado Territory in 1861, the common law of England, so far as the same is applicable and of a general nature, and all acts and statutes of the British Parliament made in aid of or to supply the defects of the common law prior to the fourth year of James I, * * * shall be the rule of decision, and shall be considered as of full force 'until repealed by legislative authority.' The statute is still in force in this state and is now a part of our statutory law (6516 C.L. 1921. *The common law of England was not adopted in the State of Colorado by our constitution, as it was originally approved by the people, or by subse-*

*quent constitutional enactment. The Common law prevails in this state by legislative enactment. It may be repealed, without violating our Constitution, by our general assembly at any time it chooses to do so. * * * The legislature may at any time by a legislative act, repeal any part of the common law either expressly or by passage of an act inconsistent therewith on any particular subject."* (Emphasis supplied.)

Guest statutes similar to our own have been enacted in many states also having constitutional provisions substantially identical with the Colorado Constitution. In all such states the guest statute has been upheld as containing no constiutional infirmities. The cases are collected and commented upon in *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615; 186 Wash. 700, 59 P. (2d) 1183, 111 A.L.R. 1011, wherein it is stated at pages 1011 and 1012 of the A.L.R. annotation:

"In order to prevent fraud and collusion between gratuitous guests in motor vehicles and their owners or operators, resulting in unjustly charging automobile liability insurers for injury or death of guests, statutes have been enacted in many states relieving in varying degrees the owner or operator from liability for injury or death. Some statutes go to the extent of discharging the owner or operator from all liability; others from liability for all except intentional or willful acts, and still others only from liability for injuries due to ordinary negligence. *Where these statutes do not wholly deny a gratuitous guest a right of action against the owner or operator of an automobile for an injury they are generally held constitutional.* (Citations.)"

See, also, the cases collected and commented upon in *Harper & James on Torts,* Vol. 2. P. 951 at Fn. 4.

A relatively recent case sustaining the guest statute of Kansas, is *Wrights' Estate v. Pizel et al.* 168 Kas. 493, 214 P. (2d) 328. That case involved a guest statute similar to our own and it was there held that it contains no constitutional infirmities. More specfically, it was de-

cided that the guest statute does not violate Section 18 of the Bill of Rights of the Kansas Constitution. Section 18 of the Kansas Constitution provides that "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

The Kansas court then discusses and answers the constitutional questions raised by counsel for plaintiff here.

Again, in *Clarke v. Storchak,* 384 Ill. 564, 52 N.E. (2d) 229, where it was claimed that a guest statute similar to ours was unconstitutional as violative of Section 19 of Article II of the Constitution of Illinois, which provides: "Every person ought to find a certain remedy in the law for all injuries and wrongs which he may receive in his person, property or reputation; * * *." The Illinois court after first answering many of the questions raised by counsel for plaintiff in the present case, found no constitutional infirmity in the Illinois guest statute.

See, also, *Emberson v. Buffington,* 228 Ark. 120, 306 S.W. (2d) 326 (1957) upholding the Arkansas guest statute; and *McMillan, et al. v. Nelson,* 149 Fla. 334, 5 So. (2d), 867, sustaining the constitutionality of the Florida guest statute.

Counsel for plaintiff contends that the statute is unconstitutional in that it violates the due process clause of both the constitution of the State of Colorado and of the United States, and that it is special legislation limiting civil actions and thus unconstitutional.

The leading case dealing with the constitutionality of guest statutes similar to our own is *Silver v. Silver,* 108 Conn. 371, 143 A. 240, 65 A.L.R. 943. Section 12 of the Declaration of Rights of the Connecticut Constitution reads:

"All courts shall be open, and every person, for an injury done him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

That specific provision of the Constitution was not

mentioned by the court, nor was the 14th Amendment to the Federal Constitution, but there is no reason to suppose that they were not considered by the court in upholding the constitutionality of the Connecticut guest statute under the police power of the state.

The court said:

"Legislation under the police power of the state is not confined to public health, safety, or morality, but may extend to matters in the interest of the public welfare or convenience. (Citations.) * * * The legislative department is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wisdom of its legislation is not the concern of the courts. It is our duty to sustain an act unless its invalidity is in our judgment beyond a reasonable doubt. (Citations.) *That the state may under the police power regulate travel upon the public highways cannot be doubted.* (Citations.) This includes the power to regulate the use of motor vehicles. (Citations.) *'That the regulation of motor vehicles and motor vehicle traffic is a proper subject for legislative action under the police power is not questioned.'* (Citations.) Ever since motor vehicles have come into general use they have been classified separately from horse-drawn vehicles and the power of the Legislature to impose upon their owners and operators duties not placed upon others has been generally upheld. (Citations.)

"The plaintiff's contention is that the statute makes an unreasonable classification between the guest in an automobile and the guest in any other mode of conveyance or in any other place, thus depriving him of equal protection of the law. *Assuming, as we must, the power of the Legislature to regulate the operation of motor vehicles, that includes the power to enact legislation affecting the reciprocal rights and duties of all who use them, owners, operators or occupants, when these rights and duties arise out of such operation.* The duty which the owner or operator owes to his guest in the

operation of the automobile being a legitimate subject-matter of legislation, the guest is not deprived of the equal protection of the law because that duty is made to vary from that owed to a house guest or a guest in some other mode of conveyence. The basis of the classification is the automobile, and the act affects alike all those who may elect to be transported in it as guests of its owner or operator. *This classification is within the wide range of discretion which the Legislature has, since it has a fair and substantial relation to the object of the legislation, which is the control or regulation of automobile traffic upon our highways.* (Citations.) Primarily the question of classification is for the Legislature and the courts will not interfere unless the classification is clearly unreasonable. * * *

"The statute imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he is required at common law to exercise toward a passenger who pays for his tranportation. Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of the law, as for example between the gratuitous bailee and the bailee for hire, the common carrier and the private driver, the inn-keeper and the ordinary host. In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. (Citations.) *There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay, and the reason for a distinction between the measure of liability in the case of a gratuitous bailment and gratuitous transportation is not obvious. It seems to us that the Legislature was acting well within the limits of the police power in making a distinction between the degree of*

*care to be exercised by the owner of a motor vehicle toward a guest and that to be exercised toward one who pays for his transportation. * * *"* (Emphasis supplied.)

The court held the statute valid as containing no constitutional infirmities and the case was thereafter appealed to the United States Supreme Court, *Silver v. Silver*, 280 U.S. 117, 74 L. Ed. 221, 65 A.L.R. 939, where the judgment of the State Court was affirmed. Mr. Justice Stone delivered the opinion of the Court and stated in part as follows:

"As the record does not disclose the constitutional grounds on which the appellant challenged the validity of the statute, our review will be limited to a single question arising under the Federal Constitution which was considered in the opinion of the court below. * * * *We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.* (Citations.)
* * *

"The use of the automobile as an instrument of transportation is peculiarly the subject of regulation. We cannot assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. * * * Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of the courts.
* * *

*"In this day of almost universal highway transportation by motor car, we cannot say that abuses originating*

*in the multiplicity of suits growing out of the gratuitous
carriage of passengers in automobiles does not present so
conspicuous an example of what the legislature may
regard as an evil, as to justify legislation aimed at it,
even though some abuses may not be hit.* (Citations.)
*It is enough that the present statute strikes at the evil
where it is felt and reaches the class of cases where it
most frequently occurs."* (Emphasis supplied.)

■ Several cases are cited in support of the state-
ment that, "The Constitution does not forbid the creation
of new rights, or the abolition of old ones recognized by
the common law, to attain a permissible legislative
object." In one, *New York Central R. R. Co. v. White,*
243 U.S. 188, 37 Ct. 247, 61 L. Ed. 667, sustaining the
validity of the New York workmen's compensation law,
the court stated:

"No person has a vested interest in any rule of law
entitling him to insist that it shall remain unchanged
for his benefit." (Citations.)

*Mountain Timber Co. v. Washington,* 243 U.S. 219, 37
Ct. 260, 61 L. Ed. 685 sustained upon similar grounds
the workmen's compensation act of the State of Wash-
ington.

In *Munn v. Illinois,* 94 U.S. 113, 24 L. Ed. 77, sustaining
a statute of Illinois which fixed maximum charges for
the storage of grain in public warehouses, the court said:

"But a mere common-law regulation of trade or busi-
ness may be changed by statute. A person has no prop-
erty, no vested interest, in any rule of the common
law. This is only one of the forms of municipal law, and
is no more sacred than any other. Rights of property
which have been created by the common law cannot be
taken away without due process; but the law itself, as
rule of conduct, may be changed at the will, or even the
whim, of the legislature, unless prevented by constitu-
tional limitations. *Indeed, the great office of statutes is
to remedy defects in the common law as they are devel-*

*oped, and to adapt it to the changes of time and circumstances.* \* \* \*" (Emphasis supplied.)

Thus the highest court in our land has spoken eloquently and logically on the subject here considered.

In 111 A.L.R. 1012 the cases upholding guest statutes similar to our own are collected. That annotation lists ten states, to-wit: Arkansas, California, Connecticut, Delaware, Michigan, Nebraska, Ohio, Oregon, Texas and Washington, whose courts of last resort have declared the then existing guest statute constitutional. To this list can be added Kansas *(Wright's Estate v. Pizel, et al.,* 168 Kan. 493, 214 P. (2d) 328); Illinois *(Clarke v. Storchak,* 384 Ill. 564, 52 N.E. (2d) 229); Florida *(McMillan v. Nelson,* 149 Fla. 334, 5 So. (2d) 867), and Alabama *(Pickett v. Matthews,* 238 Ala. 542, 192 So. 261). Each of the latter recent cases have been previously discussed herein. Suffice it to say that each also disposed of the additional constitutional questions posed by Counsel for plaintiff herein and each relied on *Silver v. Silver,* supra, in holding their own guest statute constitutional.

Counsel for plaintiff rely on the case of *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W. (2d) 347, wherein the Kentucky Guest Statute was held to be unconstitutional. The Kentucky act, including the title, reads:

"An act releasing owners of motor vehicles from responsibility for injuries to passengers therein.

\* \* \*

"No person transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation shall have a cause of action for damages against such owner or operator for any injuries received, death, or any loss sustained in case of accident, unless such accident shall have resulted from an intentional act on the part of said owner or operator."

It was plaintiff's contention that the guest statute violated certain sections of the Kentucky Constitution, and was therefore unconstitutional. Prior to the enactment of the guest statute in Kentucky the rule was well

settled that the driver of an automobile owed an invited guest the duty of ordinary care in its operation. Section 241 of the Constitution of Kentucky provides:

*"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death,* from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representation of the deceased person."

The court held that the guest statute violated the spirit and letter of the Kentucky constitution as found in Sections 14, 54 and 241, that it was the manifest purpose of the framers of the constitution to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to recover damages for his injury. No such provision can be found in the Colorado constitution.

Section 14 of the Kentucky constitution provides that all courts shall be open, that every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due process of law, and that right and justice shall be administered without sale, denial or delay. This section is substantially the same as Article II, Section 6 of the Colorado constitution. However, as previously observed, this provision does not establish a vested right not subject to change by legislative enactment when the change in the opinion of the General Assembly is reasonably necessary. Needless to say, the Kentucky guest statute completely destroyed the common law remedy for injuries or death sustained by a guest in the automobile of another arising out of the driver's conduct. It provided a remedy only for intentional conduct. This is not the case in this jurisdiction, for the Colorado guest statute provides a remedy for negligence consisting of willful and wanton conduct and Colorado does not destroy the remedy but merely changes the degree of negligence necessary for recovery.

A recent Kentucky case, *Happy v. Erwin,* (Ky.) 330 S.W. (2d) 412 (1960) is but another example of the fundamental difference in the Kentucky constitution as compared to the Colorado constitution. That case involved a Kentucky statute providing that neither a city nor its officers or employees shall be liable in any manner in the use of fire apparatus at any point outside the corporate limits of the city. The court held that the statute violated the three sections of the Kentucky constitution previously set forth above, to-wit: sections 14, 54 and 241.

Clearly the provisions of the Kentucky constitution above discussed, so dissimilar to ours, are of little value in resolving the questions presented here.

We have examined the case of *Stewart v. Houk,* 127 Ore. 589, 271 Pac. 998, 272 Pac. 893, 61 A.L.R. 1236, in which the Oregon Supreme Court held unconstitutional a statute of that state which provided that the "acceptance of a free ride as a guest in a motor vehicle shall be presumed to be a waiver of said guest for liability of accidental injury caused by the owner or driver of such motor vehicle." The court held that this act violated Section 10, Article I of the Oregon constitution. The statute there relieved the operator from all liability. This distinguishes it from the statute here involved. Later a guest statute was enacted substantially identical with the Colorado statute, and in the case of *Perozzi v. Ganiere,* 149 Ore. 330, 40 P. (2d) 1009, it was again contended that the new statute was unconstitutional because it violated Section 10, Article 1, being the "due process" clause of the Oregon constitution. In that case the court held that the statute was constitutional, that it was clearly within the police power of the State, and that it was an attempt by the Legislature to correct what it considered to be a growing evil. The following language of the Oregon court is particularly apt here:

"Article 18, §7 of the (Oregon) Constitution, provides: 'All laws in force in the territory of Oregon when this

constitution takes effect, and consistent therewith, shall continue in force until altered or repealed.' By the Act of June 27, 1844, the legislative committee of Oregon * * * provided in part as follows: 'The common law of England * * * shall constitute a part of the law of this land.' With reference to the foregoing provisions, this court, in (Citation), observed: 'Hence the Act of June 27, 1844, and Section 7 of Article 18 of the Constitution constitute a statutory and constitutional declaration that the common law of England, unless * * * modified by the statute of Oregon, and not incompatible with the principles of our government, shall be a part of the law of Oregon. (Citations).'

"The right to alter all laws in force in the territory of Oregon when the Constitution was adopted, whether the same were of common-law or legislative origin, was reserved to the people of the state by article 18, §7, supra. Indeed, that section of our organic act which adopted the common law of England clearly contemplated future changes in the common law, as evidenced in the condition expressed that the common law should continue in force 'until altered or repealed.' Moreover, had it been the intention of the framers of the Constitution to adopt and preserve the remedy for all injuries to person or property which the common law afforded, they undoubtedly would have signified that intention by exact and specific wording, rather than the language used in Article 1, §10."

\* \* \*

"The common law is not a fixed and changeless code for the government of human conduct. Its applicability depends to a large extent upon existing conditions and circumstances at any given time. For example, as the complexity of industrial relations has increased, we have seen ingrafted on the common law the defenses of the fellow-servant doctrine, contributory negligence, and assumption of risk. Due to their harshness as directed against the workman, these common law defenses have

been by legislation abolished in many of the states during the last two decades.

*If we were to give article 1, §10, the construction contended for by plaintiff, we should be obliged to declare unconstitutional much of the legislation of recent years, such, for example, as the Workmen's Compensation Law, which deprives the injured workman of the remedy which he had at common law.* (Emphasis supplied.)

\* \* \*

"There was and is no constitutional inhibition against the enactment of our guest statute. It was clearly within the police power of the state for the Legislature to attempt to correct what it considered a growing evil. \* \* \* "

We need look no further than our own statutes to find apt illustration of material change in the common law as it existed in the year 1607. In *Crippen v. White,* 28 Colo. 298, 64 Pac. 184, plaintiff was the owner of riparian lands prior to the adoption of the Colorado constitution and sought a decree thereafter giving him priority over certain appropriators of the water on a stream adjacent to his land. This court held that plaintiff had no claim to the waters and stated:

"The adoption of the common law by the territorial legislature of 1861 was limited to the extent that it was applicable to our conditions. *The law of necessity rendered the common law doctrine of riparian rights wholly inapplicable in this jurisdiction, and as has frequently been stated, required its abrogation; so that, notwithstanding the declaration of the statute, it has never been recognized as controlling in the matter of water rights.* \* \* \* " (Emphasis supplied.)

Again, in the Delaware case of *Coleman v. Rhodes,* 5 W.W. Harr, 120, 35 Del. 120, 159 A. 649, the Supreme Court of Delaware declared unconstitutional a statute of that state relieving the owner or operator of a motor vehicle from any liability whatsoever for injuries suffered or sustained by any person while riding with the

owner or in the owner's car free of charge. The same court, in the latter case of *Hazzard v. Alexander*, 6 W.W. Harr, 212, 36 Del. 212, 173 Atl. 517, held valid a subsequent statute which is like our own guest statute in that it provided that a guest can recover when the accident is intentional or caused by willful or wanton disregard of the rights of others.

Counsel for plaintiff next contend that the guest statute is unconstitutional for the reason that it is a special limitation restricting civil actions and thus in violation of Article V, Section 25 of our constitution, which provides in part as follows:

"Section 25. Special legislation prohibited. — The general assembly shall not pass local or special laws in any of the following enumerated cases, * * *; for limitation of civil actions * * *; granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever * * *."

Counsel cites only the dissenting opinion in *Noakes v. Gaiser*, supra, to support that contention, and then argues that in the instant case:

*"There is no logical relation between the classification specified, and the so-called object of the legislation. Thus we feel that the classification is arbitrary and unreasonable and since the same exemption from liability does not apply to the whole class of negligent drivers, but only to those who happen to injure guest passengers, it is special legislation."*

A similar question to that here suggested was raised in the Connecticut case of *Silver v. Silver*, supra. The Supreme Court of Connecticut said:

"The basis of the classification is the automobile and the act affects alike all those who may elect to be transported in it as guests of its owner or operator. This classification is within the wise range of discretion which the legislature has, since it has a fair and substantial relation to the object of the legislation, which is the control or regulation of automobile traffic upon our

highways. (Citations) *Primarily, the question of classification is for the Legislature, and the courts will not interfere, unless the classification is clearly unreasonable.* (Citations.)" (Emphasis supplied.)

Again, in the case of *McMillan v. Nelson,* supra, the court, in sustaining the constitutionality of the Florida guest statute, stated:

"It is generally conceded that a classification having some reasonable basis does not offend against the Constitutional provisions supra merely because it is not made with mathematical nicety or because in practice it may result in some inequality, and also that one who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. (Citations)."

\* \* \*

*"Our conclusion is that the classification established by the statute is neither unreasonable nor arbitrary and that it does not offend against the Constitutional provisions, supra."*

The Colorado statute applies to all owners and operators of motor vehicles and their guests and none are excluded. All persons who ride as guests in such vehicles are precluded from recovering for injury, death or loss caused by the operator's ordinary negligence. The Colorado act applies alike to all persons who ride in automobiles as the guest of the owner. It does not exempt any special or particular individuals from its operation, nor deprive such individuals of a right of action. All people who accept transportation in a motor vehicle as a guest without payment are included. In this respect the principle laid down in *Maitland v. People,* 93 Colo. 59, 23 P. (2d) 116 applies:

"It is said that the defendant who is the owner of a ranch situated within the limits of the game refuge, has a hunting license; that the act makes it a crime for him to kill a deer at any time within the refuge limits, whereas his neighbors just outside the refuge who kill

deer during the open seasons designated by our game laws are guiltless of any offense; that the act thus denies to the inhabitants of a certain locality the right to share equally in the privilege enjoyed by the inhabitants of other localities; *and therefore that the act is a special act within the meaning of the Constitution. This objection is not sound. All persons, including the defendant, are forbidden to kill, etc. at any time, bird or animals, with certain exceptions, within the limits of a game refuge, and all persons, including the defendant, may kill, etc., at certain times, called open seasons, birds or animals outside of such limits. The act applies to all persons alike. It is not special legislation."* (Emphasis supplied.)

■ Reason and the authorities above recited, including the highest judicial tribunal in the nation, justify our conclusion that the Colorado guest statute does not violate the "due process" clause of the Federal or Colorado Constitution, neither does it violate sections 3, 6, 14, 15 and 25, Art. II of the Colorado Constitution.

The Judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ dissent.

MR. JUSTICE FRANTZ dissenting:

Candor requires the admission that appellate courts of a number of states have held Guest Statutes not violative of *some* of the constitutional provisions cited in the proceedings of this case. But, in my humble opinion, these courts have not, as intimated in the majority opinion, resolved *all* or satisfactorily the serious problems presented to us for determination. In those decisions relied upon by the majority, constitutional safeguards apparently were fed to the capacious maw of police power, as if rights guaranteed by a written constitution must succumb to the unwritten law known as the police power.

Broken bodies, loss of eye or limb, and even loss of

life, resulting from negligence of the host, must go uncompensated, no matter how meritorious the claim of the non-paying guest, because in the exercise of the police power an end must be put to those suits in which hosts and guests collude to mulct insurance companies in damages. What injustice to the many claims based upon the legitimate ground of negligence! ·

If collusion and perjury warrant legislation such as the Guest Statute, perhaps the legislature could with as much justification do away with trial courts. For notwithstanding the existence of constitutional provisions for the establishment of courts, the police power with equal propriety could be invoked to put an end to trial process in order to prevent collusion and perjury. As well confess that the whole trial machinery for arriving at truth has failed, that the taking of depositions, propounding written interrogatories, pretrial procedures, cross-examination, evidence and counter-evidence, and so forth are deficient totally, as to recognize futility in one segment of our system of adversary proceedings.

This opinion is more than just a dissent — it is a warning and the sounding of an alarm. In the ultimate the stakes in this case are high: the rights of man as an individual and person are under fire. On this matter there shall be no leap in the dark by this court; if the opinion shall be that the Guest Statute is valid, it shall be accepted for what it is: a derogation of the "natural, essential and inalienable" rights of man which we as judges are sworn to *protect and enforce*.

Permit the legislature to despoil the man, permit inch-meal destruction of his innate rights as an individual, and eventually he will not be what the Declaration of Independence and the Constitution recognize him to be — a creature endowed with certain inherent, inalienable rights — but something greatly less than man, subject to the dictates, yes, the whims of the state. Every retreat, if only by inches, from the concept of man as a person of individual, innate rights, is a move nearer the

complete divestiture of those attributes which distinguish man from the remainder of creation. The Bill of Rights, the protective shield of natural rights, marks the great difference between this country and those authoritarian states subscribing to materialistic statism.

There is a proneness to regard constitutions as instruments of boundless accommodation, taking on so many shapes as in truth to be shapeless, and all because of the seductive notion that constitutions are Protean. That their generalities make for living documents covering changes in a developing society, no one will deny; but there are "no trespass" signs in these constitutions, effective against encroachment by the executive, legislative and judicial departments in certain areas, and among these areas are the natural rights of man enumerated in the Bill of Rights.

Natural rights, recognized and professed and secured by language of lucidity and in terms of utmost solemnity in the Constitution of this state, hold a precedent position in that fundamental document. And this is rightfully so when the rank of rights is clearly understood, for there is a hierarchy of rights. In a descending scale of importance, rights are natural, civil, political and social. Rights which are natural are necessarily inherent, innate, coming from the very elementary laws of nature, such as life, liberty, the pursuit of happiness, and self-preservation. All other rights are the outgrowth of civilization, and are derived, defined and circumscribed by the positive law of the community. *Byers v. Sun Savings Bank,* 41 Okla. 728, 139 Pac. 948, 52 L.R.A.N.S. 320, Ann. Cas. 1916 D 222.

It was not fortuitous that the Bill of Rights of our Constitution was placed after the Preamble and Article I, fixing the boundaries of this state. A study of the Constitution induces the belief that the Bill of Rights was designedly given such preeminence. Primacy of position resulted from primacy of importance. We should

be ever mindful that the Constitutional Convention was imbued with the political philosophy in which natural rights were fundamental and paramount, and, moreover, that this body had a mandate to see that these rights were memorialized and preserved. Sec. 4, Enabling Act.

The Enabling Act (Section 4) provided for a Constitutional Convention which was "authorized to form a constitution and state government for said territory; *Provided,* That the constitution shall be republican in form, * * * and *not be repugnant to the constitution of the United States and the principles of the Declaration of Independence."* (Emphasis supplied.) Among the principles of the Declaration of Independence thus to be inviolate are these timeless, treasured, ineraticable truths: that men "are endowed by their Creator with certain *unalienable rights; that among these are life, liberty, and the pursuit of happiness.* That to secure these rights, governments are instituted among men," and so forth. (Emphasis supplied.)

Pursuant to the precise requirements of the Enabling Act the Constitutional Convention formed a constitution which was adopted by the people of the proposed State of Colorado. Article II thereof was entitled "Bill of Rights." Not only was this Constitution in harmony with the precepts of the Declaration of Independence, but the Bill of Rights contained express and affirmative provisions which made these precepts a vital part of the Constitution and shored them up with living, positive language.

Seldom has there been such felicitous coincidence of literalism and spirit of a document as appears in the language employed in the Bill of Rights. Both the letter and the spirit "giveth life"; heeding one, we heed the other.

In unadorned, direct and concise language the Bill of Rights in part reads:

"In order to assert our *rights,* acknowledge our *duties,*

and proclaim the *principles upon which our government is founded,* we declare:

\* \* \*

"Section 3. Inalienable rights. — All persons have certain *natural, essential and inalienable rights,* among which may be reckoned the *right of enjoying and defending their lives and liberties;* of acquiring, possessing and protecting property; and of *seeking and obtaining their safety and happiness.*

\* \* \*

"Section 6. Equality of justice. — Courts of justice shall be open to every person, and a speedy *remedy afforded for every injury to person,* property or character; and *right and justice should be administered without* sale, *denial* or delay.

\* \* \*

"Section 25. Due process of law. — No person shall be deprived of life, liberty or property, without due process of law.

\* \* \*

"Section 28. Rights reserved not disparaged. — The enumeration in this constitution of certain rights shall not be construed to deny, *impair* or *disparage others* retained by the people." (Emphasis supplied.)

In the Declaration of Independence, the Enabling Act, and the Constitution of this state is language which should control our decision of this case. To these sacred and solemn instruments we should defer; indeed, it is our grave duty to obey the ordinations so explicity to be found in these documents.

Often forgotten in the resolution of the rights of the individual are the enabling acts. Generally, enabling acts forbid the formation of constitutions in which the rights of man as defined in the Declaration of Independence are disregarded or abridged. Life, liberty and the pursuit of happiness are among these rights said to be "unalienable." Neither federal nor state government

may *take away* or *impair* these rights, for men "are endowed by their Creator with" them.

The Enabling Act under which the State of Colorado was admitted to the Union is fundamental and paramount law to which the Constitution and the laws of the state must conform. *People v. Cassiday,* 50 Colo. 503, 117 Pac. 357; *Murphy v. State,* 65 Ariz. 338, 181 P. (2d) 336; *Frantz v. Autry,* 18 Okla. 561, 91 Pac. 193.

"This Enabling Act was accepted by the people of Arizona * * * , and it, therefore, became and is the fundamental and paramount law. It cannot be altered, changed, amended, or disregarded without an act of Congress. * * * The Arizona Constitution cannot be inconsistent with the Enabling Act." *Murphy v. State,* supra.

" * * * The convention has and can exercise plenary power subject to the limitations: (1) that the Constitution shall be republican in form; (2) that it shall not be repugnant to the Constitution of the United States and *the principles of the Declaration of Independence;* (3) that no distinction shall be made on account of race or color; and (4) that the convention shall accept by ordinance irrevocable all the terms and conditions of the enabling act.

"It is true that Congress has the power to impose conditions upon a territory, as a condition precedent to entitle it to admission as a state. Accordingly, Congress placed *certain restrictions and limitations upon the Convention, which it was required to incorporate into the Constitution,* and to be ratified by the people. *These limitations and restrictions, when ratified by the people, become a part of the fundamental law of the state."* (Emphasis supplied.) *Frantz v. Autry,* supra.

What is this Bill of Rights which incorporated in detail and in definitive form the philosophy of the dignity of the individual enunciated in the Declaration of Independence? The Bill of Rights is a litany of "certain great political truths essential to the existence of free

government." *Weimer v. Bunbury,* 30 Mich. 201. That these rights are essential to the continued existence of our government as an institution of free men should be pondered, for, I am certain, the longer the mind dwells upon the import of this truth the more zealous and jealous we become in a determination that these rights should retain their God-given integrity.

Our Bill of Rights should not be regarded as a mere "compilation of glittering generalities. * * * Many of its sections are *clear, precise, and definite limitations upon the power of the legislature,* and every other officer and agency of the people." An act of the legislature in an attempted avoidance of limitations placed upon it by the Bill of Rights is a nullity. Rights guaranteed thereunder may not be nullified by legislative action. *Atchison Street Ry. Co. v. Missouri Pac. Ry Co.,* 31 Kan. 661, 3 Pac. 284.

Do we render mutable that which was intended to be constant and invariable by sanctioning the legislation in question? "The very purpose of a Bill of Rights was to *withdraw certain subjects from the vicissitudes of political controversy,* to place them beyond the reach of majorities and officials and *to establish them as legal principles to be applied by the courts.* One's right to life, liberty and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *West Virginia State Board v. Barnette,* 319 U.S. 624, 87 L. Ed. 1171, 63 S. Ct. 1628, 147 A.L.R. 674. See *Zavilla v. Masse,* 112 Colo. 183, 147 P. (2d) 823.

If there is one lesson to be learned from the foregoing quotation other than the unchangeableness of rights guaranteed by the Bill of Rights, it is this: that the full measure of these rights remains at a certain level, never to be diminished or whittled away by majority, legislature or official, and certainly not by the courts; that these rights are "established" "as legal principles to be

554

applied by the courts." They are not subject to contraction by the political climate of any particular time.

In fact, the rights guaranteed by the Bill of Rights are so complete and so impervious to diminution by majority, legislature or official that they have been held to be self-executing. *Quinn v. Buchanan*, (Mo.) 298 S.W. (2d) 413; *Perkins v. Cooper*, 155 Okla. 73, 4 P. (2d) 64; *Burnham v. Bennison*, 121 Neb. 291, 236 N.W. 745; *Payne v. Lee*, 222 Minn. 269, 24 N.W. (2d) 259. "Constitutional provisions are self-executing when it appears that they shall take immediate effect, and ancillary legislation is not necessary to the enjoyment of the right thus given, or the enforcement of the duty thus imposed. In short, if a constitutional provision is complete in itself, it executes itself." *Lyons v. Longmont*, 54 Colo. 112, 129 Pac. 198.

Conviction of the self-executing character of the Bill of Rights is immediate when one reads the applicable portion of *Quinn v. Buchanan*, supra. To read it should be to adopt it:

"* * * Provisions of a Bill of Rights are primarily limitations on government, declaring rights that exist without any governmental grant, that may not be taken away by government and that government has the *duty to protect*. 1 Cooley's Constitutional Limitations 93, 358; Am. Jur. 1092, Sec. 308; 16 C.J.S., Constitutional Law, §199, p. 976. As these authorities show, *any governmental action in violation of these declared rights is void so that provisions of the Bill of Rights are self-executing to this extent*. See also 1 Cooley's Constitutional Limitations 166 note. They do not, however, usually provide methods or remedies for their enforcement and certainly it is proper and within the legislative power to enact laws *to protect and enforce* the provisions of the Bill of Rights. 11 Am. Jur. 1094, Sec. 309. *In the absence of legislation, individuals may enforce and protect these rights from infringement by other individuals by any appropriate common law or code remedy*. Householder v. Kansas City, 83 Mo. 488, 495, and cases cited; see also

Local Union No. 324, International Brotherhood of Electrical Workers v. Upshur-Rural Electric Cooperative Corp., Tex. Civ. App., 261 S.W. (2d) 484; Texas & N.O.R. Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S. Ct. 427, 74 L. Ed. 1034. Sec. 14, Art. I, 1945 Constitution, provides: 'That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character.' This means 'that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy.' 11 Am. Jur. 1124, Sec. 326. *Certainly violation of one's fundamental rights by another would usually be such a wrong.*" (Emphasis supplied.)

This court should "give a liberal construction to our own Bill of Rights when a question is raised concerning a denial of the rights and liberties of the individual against encroachment by the state, whether it be by executive, legislative or judicial power. These rights are *self-executing* and do not depend upon enabling legislation to make them effective." (Emphasis supplied.) *Hoy v. State,* 225 Ind. 428, 75 N.E. (2d) 915. Why? The Supreme Court of Indiana supplies the answer: "If this were not the law, mere inaction by the legislative department of this state would make such rights mere shadows devoid of substance and power to protect life and liberty."

In dealing with rights pledged to be preserved intact in the Bill of Rights, the majority, the legislature or official can act only to protect these rights or to enhance their value; none may act contrarily, and by one drop reduce the measure of these rights. Brimful they must remain. This is the significance of the Bill of Rights.

But I suggest that we consider the anatomy of these rights, assured in perpetuity by the Bill of Rights. By virtue of their very nature, the Bill of Rights could signify nothing other than what has been heretofore said. The Bill of Rights ordains that the right to life and the enjoyment thereof is "natural, essential and inalienable."

It provides that if a person is injured courts shall afford him a remedy, that right and justice be accorded him without denial. He shall not be deprived of his life without due process of law. Other personal rights are mentioned.

It is now well settled that these rights have their origin in natural law, are immutable and absolute, and transcend the power of any authority to impair, abridge or abolish them. *West Virginia State Board v. Barnette,* supra; *Thiede v. Town of Scandia,* 217 Minn. 218, 14 N.W. (2d) 400; *Bednarik v. Bednarik,* 18 N.J. Misc. 633, 16 A. (2d) 80; *Richmond F. & P. R. Co. v. Richmond,* 145 Va. 225, 133 S.E. 800; *Daily v. Parker,* 152 F. (2d) 174.

"Man as an individual possesses certain rights which are called inherent rights, inborn and inbred, the gift of his Maker, and essential to his existence and well-being, such as the rights of life, liberty, and the pursuit of happiness, which are not surrendered by entering into organized society. *They existed before society was organized and are not surrendered by entering into the organization.*" (Emphasis supplied.) *Richmond F. & P. R. Co. v. Richmond,* supra.

"Under the English common law and under our American constitutional law, natural rights are such as appertain originally and essentially to each person as a human being, as a member of organized society and as a citizen of a free government. They are rights recognized as *inherent* in the individual member of the state, *personal, absolute and inalienable.*" (Emphasis supplied.) *Bednarik v. Bednarik,* supra. "The entire social and political structure of America rests upon the cornerstone that all men have certain rights which are inherent and inalienable." *Thiede v. Town of Scandia,* supra.

The right to life, to its enjoyment, the right not to be deprived of it without due process — what do these terms contemplate? They mean the right to life, to integrity of the body and its members and faculties, to health, free from the injurious wrongs of others, regard-

less of the grade or quality of fault. Their origins were not in constitutions; they antedated such documents. They inhere in the person and are preserved inviolate by every American Bill of Rights.

"The main guaranty of private rights against unjust legislation is found in that memorable clause in the bill of rights, that no person shall 'be deprived of life, liberty or property without due process'; (Const., Art. 1, sec. 6). This guaranty is not construed in any narrow or technical sense. *The right to life may be invaded, without its destruction.* One may be deprived of his liberty in a constitutional sense without putting his person in confinement. Property may be taken without manual interference therewith or its physical destruction. *The right to life includes the right of the individual to his body in its completeness and without dismemberment;* the right to liberty, the right to exercise his faculties and to follow a lawful avocation for the support of life; the right of property, the right to acquire power and enjoy it in any way consistent with the equal rights of others and the just exactions and demands of the State." *Bertholf v. O'Reilly,* 74 N.Y. 509, 30 Am. R. 323.

Man's right to life includes those things necessary to its enjoyment; and he shall have the right to enjoy his faculties in all lawful ways. *People v. McClean,* 3 N.Y.S. (2d) 314. Personal security "consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation." *Bednarik v. Bednarik,* supra; 16 C.J.S. Const. Law §205.

These rights of which we have said much are not only natural but "inalienable." A "natural and inalienable right" is one which "is immutable and absolute and transcends the power of any authority *to change or abolish it." McGovern v. Van Riper,* 137 N.J. Eq. 24, 43 A. (2d) 514. Webster's New International Dictionary (2d Ed.) compares "inalienable" and "indefeasible," and distinguishes thus:

"That is indefeasible which one cannot be deprived of

without one's consent; that is inalienable which one cannot give away or dispose of even if one wishes. Thus, one has an indefeasible title to the house one owns absolutely, but this right may be alienated to another; under the Constitution of the United States, personal liberty, freedom of speech, etc., are inalienable rights."

Rights that are "unalienable" or "inalienable" are those natural, essential and inherent rights which belong to all men; rights which in their very nature cannot be surrendered to government or to society because no equivalents can be received for them, and which neither the government nor society can take away, because they can give no equivalents. *Hale v. Everett*, 53 N.H. 9, 16 Am. R. 82.

Besides these definitive expressions, it seems to me that Section 28 of the Bill of Rights furnishes clues to the meaning of inalienable rights. "The enumeration in the constitution of certain rights shall not be construed to deny, impair or disparage others retained by the people." Rights that may not be denied, impaired or disparaged are in essence indestructible in any manner or to any degree by any governmental agency. And it should be noted that rights not mentioned, yet naturally belonging to the individual, are not to be construed as being denied, impaired or disparaged for lack of their enumeration in the Constitution. It must follow then that those which are mentioned are not subject to denial, impairment or disparagement.

Notwithstanding these rights (right to life and to the enjoyment thereof, the right not to be harmed in body or its members through the wrongdoing of others) are natural, essential and inalienable rights, they may be alienated, i.e., denied, impaired or disparaged by legislative action in the exercise of the police power according to the majority of this court, and reliance for this position is placed upon authorities which do not discuss and consider natural and inalienable rights. Sanction for such exercise of the police power is found in the attempt to

thwart collusion between host and guest in effectuating a recovery against insurance companies. See 111 A.L.R. 1011, et seq.

There are two overriding reasons for scuttling this attitude which is so inimical to basic concepts. Those reasons were suggested in my initial remarks. They are: (1) express provisions of the Constitution may not be made subordinate to the police power, and (2) legitimate claims should not be denied presentation to the courts because there may be a large number of fictitious ones.

A right protected or created "by a constitutional provision * * * is guarded from attack or interference of any kind by the Legislature, or any other governmental agent of the state." *Menge v. Morris & E. R. R. Co.,* 73 N.J. Eq. 177, 67 Atl. 1028. "The police power of a state cannot transcend the fundamental law, and cannot be exercised in such manner as to work a practical abrogation of its provisions." *Smith v. Farr,* 46 Colo. 364, 104 Pac. 401. "Any legislative exercise under the police power which violates any right guaranteed by the national or state Constitutions is invalid." *People v. Harris,* 104 Colo. 386, 91 P. (2d) 989, 122 A.L.R. 1034.

Must legitimate negligence claims give way because other claims of the same category may be fictitious and provable through collusion? My answer is contained in the following language which I would have this court adopt:

"A legislative enactment should not be lightly set aside, but where the violation of the fundamental law is clear, it should not be allowed to stand.

"No doubt suits for breach of promise are sometimes used as a form of blackmail, but that is a matter to be dealt with in a special way. *The fact that the right is abused by some is hardly a justification for the denial of the fundamental right to redress by those who have a just cause of action."* (Emphasis supplied.) *Daily v. Parker,* 61 F. Supp. 701.

How astute the last quotation is may be shown by an

example. *A* and *B* are partners in the conduct of a mercantile establishment. *C* is the manager of the business. *D* is a friend of *B*. *A, B* and *C* are required to travel some distance to attend to a matter involving the partnership. They get into the car owned and operated by *A*, and *D* is invited by his friend *B* to go along for the ride. As they proceed toward their destination, they are all injured in a serious accident resulting from the negligence of *A* in the operation of the automobile. *B* and *C* have a right to sue *A* for their damages sustained by reason of his negligence, but under the Guest Statute *D* has no right and he has no remedy. Yet as surely as *B* and *C* have a meritorious claim, so should *D* have the same.

It would unduly lengthen this opinion to reiterate what I said in *Noakes v. Gaiser,* 136 Colo. 73, 315 P. (2d) 183, in discussing the import of Article II, Section 6, quoted above. Having had the opportunity more thoroughly to study the matter in the course of writing this dissent, I am more firmly convinced than ever that my position in that case was correct. In fact, I entertain the conviction that I was guilty of understatement in advocating the invalidity of the Guest Statute, in view of the mandate to courts of justice of this state contained in said Section 6.

I failed in that case to recognize the nature of the right involved, probably because of language in some of the cases cited, all to the effect that this provision preserved the common law right of action for injury to person. A more thorough study at that time, I am certain, would have convinced me that the right involved is more than a common law right. It is a natural, essential and inalienable right, inherent in man and never bestowed by government. I realize now that the common law recognized this right and in effect preserved it. Holdsworth's History of English Law, 218, 219, 282-284. I should further have realized that our Constitution did not create this right, but merely recognized its natural

and inherent quality and said that it should be preserved.

With this important modification of view, I hold that what I said in *Noakes v. Gaiser* is the law; that anything contrary thereto is a frustration of the Constitution.

It is asserted by Vogts that Article II, Section 3, concerning natural, essential and inalienable rights, Section 6, providing for courts of justice to be open to every person and to afford remedies for injuries, Section 14, prohibiting the taking of private property for private use, Section 15, forbidding the taking of private property for public use without just compensation, and Section 25, prescribing deprivation of life, liberty or property without due process of law, all part of our Bill of Rights, and the Fourteenth Amendment to the Constitution of the United States, are violated by the Guest Statute. The opinion of the majority concludes by saying that "Reason and the authorities above recited, including the highest judicial tribunal in the nation, justify our conclusion that the Colorado guest statute does not violate the 'due process' clause of the Federal or Colorado Constitutions, neither does it violate" the other mentioned sections. A summary review of the cases cited by the majority opinion will now be undertaken, merely to show that the authors of the opinions in those cases did not decide the questions raised by Vogts, and that none considered natural, essential and inalienable rights per se in perspective or at all.

The first case said to be in point is *Pickett v. Matthews,* 238 Ala. 542, 192 So. 261, which on first reading appears to be the most sweeping and the most damaging to the position that I would have this court take. Upon a second reading the conclusion must be reached that the case is not well-reasoned, is distinguishable because of markedly different constitutional provisions, and contains the same confusion regarding common law rights and natural, inherent rights that I displayed in my dissent in *Noakes v. Gaiser,* of which I have already made mention. In the Pickett case, the court considered Section 13 of the Ala-

bama Constitution, which "provides 'that every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law.' " The court also considered Sections 1, 6 and 22 of their state Constitution, and the equal protection provision of the Federal Constitution. In the course of the opinion, the court declared:

"These taken together guarantee the equal protection of the laws, protect persons as to their inalienable rights; prohibit one from being deprived of his alienable rights without due process; and prohibit irrevocable or exclusive grants of special privileges or immunities.

"It is claimed that by those principles the legislature cannot legalize a negligent injury to one's person or property, thereby changing the rule of duty not to cause damage by a negligent act, whether that duty is a creature of the common law or statute. It is thought that to do so deprives one of 'life, liberty, or property' without due process (section 6, Constitution), because such rights are inalienable under section 1, and create a special privilege under section 22, and violate the equal protection of the Fourteenth Amendment.

"The duty to use due care not to harm the person or property of another is of common law origin. It is therefore a right of property or of life and liberty safeguarded by the due process and other features of the Constitution, unless they yield to some power recognized to be superior in respect to the situation.

"The police power sometimes is superior to such personal and property rights."

If the right were merely a common law right other than a fundamental, inherent, inalienable right, I might have no quarrel with the decision of the court. Those rights recognized by the common law as natural, essential and inalienable may not be alienated in the exercise of the police power, as I have already indicated. In any view of this decision of the Supreme Court of Alabama, it is not persuasive in the case before us, particularly

since police power cannot in this state override express constitutional provisions.

The next case considered by the majority is that of *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 613, 186 Wash. 700, 59 P. (2d) 1183, 111 A.L.R. 1011. The Guest Statute was attacked in that case on the ground that it violated the constitutional provisions of the State of Washington relating to the title of an Act, and relating to due process, to class legislation and equal protection, to trial by jury, to a section requiring mandatory construction unless expressly declared otherwise, to the judicial powers of the state (apparently similar to our Section 6), and that it violated the due process and equal protection provisions of the Federal Constitution. Concerning the provisions relating to state due process, to class legislation and equal protection, the court said: "None of these constitutional provisions apply to laws enacted by a state legislature in the exercise of its police power." Concerning the remaining provisions, the court followed the authority of the Silver case, concerning which comment will be made later.

The majority opinion then considers the case of *Wrights' Estate v. Pizel et al.,* 168 Kan. 493, 214 P. (2d) 328. The only attack made on the Guest Statute in that case involved Section 18 of the Kansas Bill of Rights, which provides that "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." In upholding the Guest Statute the court relied upon the case of *Silver v. Silver,* and it should be noted that that case eventually went to the Supreme Court of the United States, which held that the Constitution does not forbid the *abolition of old rights recognized by the common law to obtain a permissible legislative object.* There may be old rights recognized by the common law that are subject to denial, impairment or disparagement, but certainly not inalienable rights. The Kansas court

failed to consider the rights of the guest from the standpoint of their inalienability.

*Clarke v. Storchak,* 384 Ill. 564, 52 N.E. (2d) 229, is another case relied upon by the majority. The court considered an attack upon the Illinois Guest Statute based upon an alleged faulty title, that the Act was destructive of their constitutional provision requiring a remedy to every person for injuries and wrongs to person, property, or reputation, and that it violated federal due process. There is no discussion of natural and inalienable rights in the decision, and one wonders what the able Illinois Supreme Court would do with the question if it were directly presented to the court, particularly in view of the recent case of *Molitor v. Kaneland Community Unit Dist. No. 302,* 163 N.E. (2d) 89, disowning sovereign immunity.

The state of Arkansas adopted a Guest Statute which in part denied any remedy to persons riding as guests who were related to the host either by consanguinity or affinity in certain degrees. This portion of the Act was declared unconstitutional in the case of *Emberson v. Buffington,* 228 Ark. 120, 306 S.W. (2d) 326. It is true that in the course of the opinion the court discussed the constitutional provision granting to every person a certain remedy for injuries or wrongs. It held that portion of the Act attacked invalid by reason of such constitutional provision. It also held that the Act was severable and that the remaining portion of the Guest Statute did not violate the constitutional provision mentioned.

Still another case relied upon in the majority opinion is that of *McMillan v. Nelson,* 149 Fla. 344, 5 So. (2d) 867. I find nothing in this case to warrant its citation as authority here. As I understand the decision, it stands for nothing more than the proposition that the Guest Statute is based upon a reasonable classification inoffensive to the provision that all courts shall be open so that

every person shall have a remedy by due process of law for any injury.

*Silver v. Silver,* 108 Conn. 371, 143 Atl. 340, 65 A.L.R. 943, and on appeal to the United States Supreme Court resolved at 280 U.S. 117, 74 L. Ed. 221, 65 A.L.R. 939, is considered a leading case. The majority opinion quotes from both the Connecticut Supreme Court decision and the United States Supreme Court decision. On questions involving the Constitution of Connecticut, the court was divided three to two for constitutionality. An attack was made on the Guest Statute on the ground that it violated the equal protection provisions of the state and federal Constitutions. Three members of the court held that it did not, and the Supreme Court of the United States said it was not violative of the equal protection provisions of the United States Constitution. This case resolved none of the questions raised by Vogts in this case, and the question of inalienable rights was not considered.

The only questions resolved in *Perozzi v. Ganiere,* 149 Ore. 330, 40 P. (2d) 1009, related to the constitutional provisions of the state of Oregon, providing (1) that all laws of the territory should continue in force until altered or repealed, and (2) that every man shall have a remedy by due course of law for injury. On the first, the court held that the common law or laws of legislative origin were subject to alteration or repeal. Of course, inalienable rights are not subject to alteration or repeal in this state, whatever the law may be as to common law or acts of the legislature. The fallacy of this decision arises from the view that the Supreme Court of Oregon apparently did not realize it was dealing with inalienable rights as a part of the law preserved by the common law.

Lastly, the majority opinion cites the case of *Hazzard v. Alexander,* 6 W.W. Harr. 212, 36 Del. 212, 173 Atl. 517, in which the court actually decided that the Guest Statute could be given a retroactive effect without violating any provision of the state Constitution.

A review of the cases cited in the majority opinion

shows that in only one case was the court confronted with the question of natural and inalienable rights. In that case, as already pointed out, the court failed to consider these rights as inherent rights, indestructible and immutable, but discussed them in terms of common law rights. I submit that on the basis of fundamental constitutional law, logic, and the basic concepts of our form of government as outlined in this opinion, the Guest Statute should be held unconstitutional.

MR. JUSTICE HALL joins in this dissenting opinion.